1999 OK 73

**Gary W. VANCE, a/k/a Gary William Vance, Plaintiff, and Susan C. Vance, Plaintiff/Appellant,**

v.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION, Defendant/Appellee.**

**No. 90,916.**

Supreme Court of Oklahoma.

Sept. 21, 1999.

Gregory G. Meier of Meier, Cole & O'Dell, Tulsa, Oklahoma, for plaintiff/appellant.

John B. Wimbish of Riddle & Wimbish, Tulsa, Oklahoma, for defendant/appellee.

LAVENDER, J.

¶1 The determinative issue in the present cause is whether Susan Vance [Susan or appellant] was so mentally disabled as to be incapable of recognizing that she had been sued when she was *personally* served with process in a foreclosure action brought by Federal National Mortgage Association [FNMA].

## I.

### FACTS AND PROCEDURAL HISTORY

¶2 Throughout this cause's entire history there has been no *judicial* determination that one of the parties, Susan Vance, is mentally incapacitated or otherwise in need of a legal guardian. This is not to say that she is not the paranoid schizophrenic she claims she is. It is to say that at the time FNMA instituted the second of two foreclosure actions upon the same note and mortgage the fact of her mental capacity or lack thereof had not been adjudicated.

¶3 In July 1993 FNMA instituted the first of two foreclosure actions (on the same note and mortgage) against Gary and Susan Vance (husband and wife) by serving Gary Vance at his place of business.[1] The foreclosure was contested by the Vances; and

---

1. It is undisputed that at all relevant times *Mr.* Vance's business address stood unchanged.

FNMA—after its motion for summary judgment was denied—dismissed its action on June 8, 1995. The Vances' attorney avers that during the first foreclosure's pendency he informed FNMA (through its counsel) that Susan was a paranoid schizophrenic.[2]

¶4 On August 10, 1995, using the same counsel that it had employed in the first action, FNMA again sought to foreclose its note and mortgage against Susan and her husband. Although service in the second action was issued to both Vances, *it was personally served only upon her.*[3] From the record it would appear that she did not answer or otherwise plead to the foreclosure action. FNMA secured a default judgment. In the second action FNMA did not communicate with Mr. Vance—although his business address was at all relevant times known to it—until after the foreclosure process was completed. During the eviction process FNMA contacted Mr. Vance because of concern about what to do with the debtors' personalty on the foreclosed premises.

¶5 Upon becoming aware of the second foreclosure and the default judgment Gary and Susan Vance instituted the present action seeking vacatur. Their petition was verified by Mr. Vance and recited as the bases for vacation: (a) fraud in the obtaining of service upon both Susan and her husband and (b) failure to comply with the notice requirements of due process. FNMA moved for summary judgment against Susan *only* which was given.[4] After the trial court refused to certify the summary-judgment order as immediately appealable, Mr. Vance dismissed his remaining claims so as to impart finality to the otherwise interlocutory order. On appeal the Court of Civil Appeals [COCA] affirmed FNMA's summary judgment. Susan then sought certiorari which was granted.

## II.

### THE STANDARD OF REVIEW FOR SUMMARY JUDGMENTS

■■■■ ¶6 While summary process is available to litigants to identify and isolate non-triable fact issues, its purpose is not to defeat a party's right to trial.[5] It is only apropos when tendered evidentiary materials support but a single inference favorable to the movant and then only after viewing the proffered materials in the light most favorable to the non-moving party.[6] It is not summary adjudication's function "to set the stage for trial by affidavit."[7] Although the trial court must consider factual matters when considering summary judgment, a cause's expedited resolution by this process is appropriate *only* when all that remains regarding a particular issue is a question of law, i.e., when "one party is entitled to judgment as a matter of law because there are no material disputed factual questions."[8] Hence, our review of a summary judgment is *de novo.*[9]

## III.

### THE VACATION OF SUMMARY JUDGMENT PREDICATED UPON DUE PROCESS CHALLENGES

■■■■ ¶7 The Court is called upon today to balance two legal interests—the judgment

---

2. *See* Record, tab 8, Affidavit of Gregory G. Meier, Exhibit to Plaintiff's Brief in Opposition to Defendant's Motion For Summary Judgment Against Plaintiff Susan C. Vance, filed 6/26/97 in CJ 96–2008. FNMA denies the veracity of this averment in its answer to the petition.

3. FNMA attempted to effect service upon Gary Vance through service upon his wife. In her petition filed in the instant case Susan represents that FNMA was informed by the Vances' counsel during the first foreclosure that she and Mr. Vance had separated and had not shared a common residence for over a decade. FNMA denies the veracity of this statement in its answer to the petition.

4. In support of its motion for summary judgment FNMA represented to the trial court in its motion

for summary judgment that Susan lives in a house, does her own shopping and drives a car.

5. *Shamblin v. Beasley,* 1998 OK 88, 967 P.2d 1200, 1207.

6. *Hulett v. First Nat'l Bank and Trust Co.,* 1998 OK 21, 956 P.2d 879, 881.

7. *Shamblin, supra* note 5 at 1207.

8. *Carmichael v. Beller,* 1996 OK 48, 914 P.2d 1051.

9. *Hoyt v. Paul R. Miller, M.D., Inc.,* 1996 OK 80, 921 P.2d 350, 352.

roll's reliability and a defendant's "due process" right to notice. Certainly, the judgment roll's integrity is vital to the orderly transfer of real property interests in Oklahoma. District court judgments should not be made to depend "for their stability and permanency" on evidence other than that reflected in the judgment roll itself.[10] Juxtaposed against the legal system's need for reliability in the judgment roll is a party's right to use extrinsic evidence to vacate a judgment when he/she is denied due process. Defendants have a right (under both federal[11] and Oklahoma's[12] regimens of due process) to receive meaningful and effective notice of legal actions which have potential for divesting them of property interests.[13]

■ ¶8 In her petition Susan asserts that the trial court denied her due process of law when it granted FNMA default judgment in the second foreclosure. She alleges that since she was mentally incapable of understanding that the process served upon her imparted notice of a pending suit, the trial court did not acquire jurisdiction over her person. She also claims that the service of process upon her by FNMA was fraudulent for it knew of her mental infirmity before it served her. The asserted bases for the judgment's invalidity and pressed for vacation are not affirmatively disclosed upon the face of the second foreclosure's judgment roll. The filed return of service in that action reflects that Susan was personally served and is facially regular. Hence, *inspection of the judgment roll* does not disclose the suggested defects in service. Rather the challenge pressed below by Susan presents an *issue of fact* which can only be resolved by consideration of proof extrinsic to the second foreclosure's judgment roll. Because the *irregularity in service suggested by Susan can only be proved by evidence outside the judgment roll*, the challenged judgment is *not void*[14] (in the legal sense) for lack of jurisdiction but at best is *voidable* for want of due process.[15] *Sans* Vance's filed petition the judgment roll remains inviolate as a muniment of title.

■ ¶9 Lastly, Susan's impeachment effort is timely since it was brought within three years of the judgment's date.[16] As regards Susan's challenge to the service of process and judgment entered in FNMA's second foreclosure, the Court's holding in *Pettis v. Johnston*, 78 Okla. 277, 190 P. 681, 688 (1920), is particularly incisive and trenchant. There the Court observed:

If it be necessary to resort to extrinsic evidence to show the invalidity of a judgment, the motion to vacate must be presented within three years following the rendition of the judgment or order, otherwise every judgment valid upon the face of the judgment roll will depend for its perpetuity upon the frail memory of man.

■ ¶10 It is not every variance in the service of process which will invalidate it. Rather to impugn the efficacy of service which is valid on the face of the pertinent

---

10. *Pettis v. Johnston*, 78 Okla. 277, 190 P. 681, 687 (Okla.1920).

11. *See* U.S. Const. amend. XIV, § 1, which provides in pertinent part::
"[N]or shall any State deprive any person of life, liberty, or property, without due process of law...."

12. *See* Okla. Const., art. II, § 7, which provides:
"No person shall be deprived of life, liberty, or property, without due process of law."

13. *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 795, 103 S.Ct. 2706, 2709, 77 L.Ed.2d 180 (1983); *Bomford v. Socony Mobil Oil Co.*, 1968 OK 43, 440 P.2d 713, 718.

14. For when a judgment is void as determined by a facial inspection of the judgment roll, see *Sooner Fed. Savings & Loan Ass'n v. Smoot*, 1995 OK 31, 894 P.2d 1082, 1086.

15. *Pettis, supra* note 10 at 682 syl.

16. *See* 12 O.S.Supp.1993 § 1038, whose pertinent terms provide:
"Proceedings to vacate or modify a judgment, decree or order, ... for the causes mentioned in paragraphs 3 and 7 of Section 1031 of this title, shall be within three (3) years...."
The pertinent terms of 12 O.S.1991 § 1031 provide:
"The district court shall have the power to vacate or modify its own judgments or orders within the times prescribed hereafter:
* * *
Third. For mistake, neglect or omission of the clerk or irregularity in obtaining a judgment or order...."
*See also Pettis, supra* note 10 at ¶ 11.

judgment roll a *challenger must prove* that the departure offends articulated standards of due process and hence deprives it of a fundamental right to notice. The impeachment of service of process can be facilitated either by motion in the litigation where the service is filed or by a separate action (asserting the service's deficiency) to invalidate the earlier-entered judgment.[17]Here, it would appear that because the appellant's knowledge of the allegedly improper service came to her attention after execution on the foreclosure judgment had been accomplished, she elected the latter.

¶ 11 The notice contemplated by the due process clauses of both the U.S. Constitution amend. XIV, § 1 and Oklahoma's Constitution, art. I, § 7 requires more than mere compliance with procedural formalities, rather they guarantee that procedure be fair.[18] The due process mandated by these basic-law provisions requires notice reasonably calculated *under all the circumstances* to inform the interested parties of the action's pendency and to afford them an opportunity to present their objections.[19] In *Shamblin v. Beasley*[20] the Court adopted a *totality-of-circumstances* test to assay the probability that service actually imparts the degree of notice which is constitutionally prescribed. The adopted test requires that under *all the circumstances present in a case* there be a *reasonable probability* the service of process employed apprizes its recipient of the plaintiff's pressed demands and the result attendant to default.

¶ 12 Both FNMA and COCA reason that because the strictures of 12 O.S.1991 § 2004(C)(1)(c)(2)[21] require service upon both the incompetent person and his/her guardian, a party cannot legally be incompetent unless a guardian has been appointed for them by a court of law. This analysis begs the question whether there existed a reasonable probability that Susan—in light of her mental condition at the time she was served—was capable of understanding she had been sued. Competency is not a rigid construct, but rather calls for an *overall* assessment.

¶ 13 A survey of Oklahoma's statutory scheme for the protection of the mentally infirm[22] does not reveal a legal mandate for the appointment of a guardian for every person who is so mentally incapacitated that he/she cannot understand legal processes. Nor is the law so rigid that it would deny a person who suffers from a mental illness the protection of due process of law merely because that person has not been formally declared to be mentally incapacitated by a court of law.[23] Section 2004(C)(1)(c)(2) means no more than when a person has been declared by a district court to be mentally incapacitated and a guardian appointed, both parties must be served with process for the court to acquire jurisdiction. This construction precludes the statute's [§ 2004(C)(1)(c)(2) ] application to deny a mentally infirm person's constitutionally-mandated right (to notice) and, hence, saves it from being unconstitutional under applicable "due process" standards.

¶ 14 A party's ability to cognitively appreciate the notice of an action imparted by service of process is presumed under the common law. It is only when a party's mental condition is put in issue by a petition—like that filed in the present case—that it becomes a "material" fact which must be assessed by the trial court. On the record

---

**17.** *Zipperle v. Smith,* 1956 OK 303, 304 P.2d 310, 313; *Grayson v. Stith,* 181 Okla. 131, 72 P.2d 820, 822 (1937).

**18.** *Zinermon v. Burch,* 494 U.S. 113, 125–26, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990).

**19.** *Bomford, supra* note 13 at 718.

**20.** *Shamblin, supra* note 5 at 1211.

**21.** The pertinent terms of 12 O.S.1991 § 2004(C)(1)(c) are:

"Service shall be made as follows:

* * *

(2) Upon . . . an incompetent person by serving the summons and petition personally and upon the incompetent person's guardian;"

**22.** *See* O.S.1998 Title 43A [mental health] and Title 30 [Oklahoma Guardianship and Conservatorship Act].

**23.** *See Covey v. Town of Somers,* 351 U.S. 141, 146, 76 S.Ct. 724, 727, 100 L.Ed. 1021 (1956), where the Court held: "Notice to a person known to be an incompetent who is without the protection of a guardian does not measure up to this [due process] requirement."

it is disputed whether Susan possessed the mental ability to understand the import of service of process in FNMA's second foreclosure.[24] Under the totality-of-circumstances test mandated by *Shamblin* this is a unresolved fact whose materiality lies at the heart of her plea.

¶ 15   There is an additional disputed fact disclosed by the record. The appellant's counsel contends that he informed FNMA of his client's lack of mental capacity and FNMA denies the same. FNMA's knowledge of Susan's mental incapacity is material under the U.S. Supreme Court's holding in *Covey v. Town of Somers*.[25] There the Court held that service of process upon one known to be incompetent contravenes that degree of basic fairness demanded by due process. The case's mandate clearly ascribes materiality to FNMA's knowledge of Susan's mental condition. Nonetheless, while a plaintiff's earlier acquired knowledge of a defendant's incompetency can be a factor in deciding whether to vacate, proper analysis still requires the trial court's primary focus in its "due process" assessment be on Susan's capacity to understand the service of process in the second foreclosure. Oklahoma's extant jurisprudence requires as a predicate to summary judgment that there be no unresovled disputed *material* facts.[26] Upon remand the trial court must determine in order to assess the appellant's due-process challenge (a) whether Susan is so mentally incapacitated that she was unable to understand the import of service of process and (b) whether FNMA knew of her mental infirmity when it had her served in the second foreclosure.[27]

¶ 16   Summary judgment under the present record is not sustainable.

### IV.

### SUMMARY

¶ 17   By her petition in the present case Susan Vance placed in issue her ability to understand—in light of a suggested mental infirmity—the notice imparted by FNMA's service of process in its foreclosure action. Summary adjudication is available to resolve the issue only when judgment is available as a matter of law because there are no disputed material factual questions remaining in the case. Here that cannot be said; hence, summary judgment is not legally appropriate.

¶ 18   Because of the appellant's due-process challenge the trial court must ascertain on remand whether Susan was so mentally disabled as to be incapable of understanding that (1) she had been sued and (2) judgment could be entered against her if she did not respond. If under the totality of the circumstances the trial court determines that Susan was so mentally challenged that she did not appreciate the notice imparted by service of process, the summary judgment entered in the second foreclosure will be invalid as to her and subject to vacation.

¶ 19   Upon certiorari previously granted,

THE COURT OF CIVIL APPEALS' OPINION IS VACATED; THE DISTRICT COURT'S JUDGMENT IS REVERSED; AND THE CAUSE IS REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH TODAY'S PRONOUNCEMENT.

24. While the record reflects that Susan was able to drive a car and purchase her own groceries, it also demonstrates that she experienced hallucinatory episodes over an extended period of time and was periodically hospitalized for the same.

25. *See Covey, supra* note 23.

26. *See* section II *supra*.

27. The Court today does not require assessment of a defendant's mental competency as a predicate to an action's initiation. Unless a person has been judicially declared to be incompetent, he/she can prosecute or defend a civil action in person or by attorney.

   This does not mean that a mentally disabled person will not receive the court's protection as 12 O.S.1991 § 2017 C allows for the appointment where appropriate of a guardian ad litem for the protection of a litigant's rights and interests. A guardian ad litem's appointment does not amount to an adjudication of incompetency but would merely be a determination of the fact that the state of the record indicates the need for court intervention for a party's protection. It is an assertion of the court's inherent common-law equitable powers.

¶ 20 SUMMERS, C.J., HODGES, LAVENDER, OPALA, and KAUGER, JJ., concur.

¶ 21 HARGRAVE, V.C.J., SIMMS, and WATT, JJ., dissent.

