24 P.3d 900 (2001)
2001 OK CIV APP 70
In the Matter of T.E.B., S.H., J.M., T.B., K.H., and C.D.B.
Judy Bratcher, Appellant,
v.
State of Oklahoma, Appellee.
No. 95,505.
Court of Civil Appeals of Oklahoma, Division No. 3.
May 3, 2001.
Sherry J. Neal, Oklahoma City, OK, for Appellant.
Diane Box, Office of the Juvenile Division, Oklahoma County District Attorney, Oklahoma City, OK, for Appellee.
Released for Publication by Order of the Court of Civil Appeals of Oklahoma, Division No. 3.
*901 BUETTNER, Presiding Judge:
¶ 1 The trial court found that Judy Bratcher, mother of six alleged deprived children, was unable to provide a fit, safe, suitable home for her children because of her mental deficiency (retardation) that would not respond to treatment nor substantially improve. It therefore ordered the termination of her parental rights in the five older children, but not the youngest who was taken by the State at birth and lived since that time in foster care. We affirm.
¶ 2 Bratcher had been found incompetent to stand trial on the criminal charges (five felony counts of neglect) relating to the facts that led to the adjudication that her children were deprived.[1] Before trial on the State's petition for termination of her parental rights, Bratcher filed a motion to determine competency. The trial court found her incompetent and appointed a guardian ad litem for the termination of parental rights trial. Bratcher objected to proceeding to trial based on this finding, but the court overruled her objection. She waived her right to a jury and the matter was tried to the judge.
¶ 3 A finding of mental deficiency is not in and of itself sufficient for termination of parental rights. The State must prove, by clear and convincing evidence that:
a. the child has been adjudicated deprived, and
b. custody of the child has been placed outside the home of a natural or adoptive parent, guardian or extended family member, and
c. the parent whose rights are sought to be terminated has a mental illness or mental deficiency, as defined by Section 6-201 of the Title 43A of the Oklahoma Statutes,[2] which renders the parent incapable of adequately and appropriately exercising parental rights, duties and responsibilities, and
d. the continuation of parental rights would result in harm or threatened harm to the child, and
e. the mental illness or mental deficiency of the parent is such that it will not respond to treatment, therapy or medication and, based upon competent medical opinion, the condition will not substantially improve, and
f. termination of parental rights is in the best interests of the child.
Provided, a finding that a parent has a mental illness or mental deficiency shall not in and of itself deprive the parent of his or her parental rights;
10 O.S. Supp.2000 § 7006-1.1(A)(13).
¶ 4 Bratcher contends that the State failed to introduce any evidence that she was unable to provide a fit, safe and suitable home for her children due to her mental deficiency that will not respond to treatment. She also claims that because she was found to be incompetent, then trial, as a matter of due process, should have been suspended.
*902 ¶ 5 With respect to her first allegation of error, that the evidence was insufficient to support a judgment terminating her parental rights, on review "[t]he findings of a trial court sitting without a jury are entitled to the same weight that would be given [a] verdict by a jury and if there is any evidence, including reasonable inferences therefrom, tending to support the findings, the trial court's judgment will not be disturbed on appeal." Matter of J.M., 1993 OK CIV APP 121, 858 P.2d 118, 121, citing Maras v. Smith, 1966 OK 231, 420 P.2d 483.
¶ 6 There is no question but that Bratcher is mentally deficient. The psychologist who asked her the statutory questions for the criminal action also testified at the termination trial concerning that examination. The psychologist formed the opinion that Bratcher was mildly to moderately retarded, a condition which would not improve with treatment. We therefore review the record to determine whether the State presented evidence to support the statutory elements necessary before termination of parental rights of a person with mental deficiency may be ordered.
a. After trial, the court adjudicated the children deprived.[3]
b. The children had been placed outside the family, in foster care.
c. Bratcher's mental deficiency rendered her incapable of adequately and appropriately exercising parental rights, duties and responsibilities. The evidence presented by the State showed that the children lived in filth and squalor. They had significant physical and mental developmental delays. They were in need of medical treatment.[4]
d. Based on the history of chronic serious neglect, there was evidence that continuation of parental rights would result in harm or threatened harm to the children. The psychologist testified that while the neglect was not intentional, it would probably be repeated.
e. A forensic psychologist established that Bratcher's mental deficiency was not amenable to treatment or improvement. Bratcher relied on the psychologist's report as evidence to support her motion to determine incompetency.
f. Finally, there was evidence that it was in the children's best interests that Bratcher's parental rights be terminated. In her care, their development was significantly impaired. In foster care, the children were beginning to learn, to play, to have confidence that they would have another meal.
¶ 7 The State carried its burden by clear and convincing evidence.
¶ 8 Bratcher argues next that the law governing criminal proceedings, when a person is declared incompetent, should apply to proceedings for termination of parental rights.[5] We note first that the same report *903 by the psychologist was used in the criminal and termination proceedings, so that the judges' determinations of incompetency were based on the same report. The psychologist asked the statutory questions required for the finding in criminal proceedings as directed by 22 O.S. 1991 § 1175.5:
The jury or the court, as the case may be, shall answer the following questions in determining the disposition of the person whose competency is in question:
1. Is the person incompetent to undergo further criminal proceedings at this time? If the answer is no, criminal proceedings shall be resumed. If the answer is yes, the following question shall be answered.
2. Can the incompetency of the person be corrected within a reasonable period of time, as defined by the court, by treatment, therapy or training? If the answer is yes, the court shall make the appropriate order. If the answer is no, the following questions shall be answered.
3. Is the person mentally ill, mentally retarded or a person requiring treatment as defined by Section 3 of Title 43A?
4. Is the person presently a threat to the safety of self or others if released?
In criminal proceedings, if the person is found to be incompetent and not capable of achieving competency because of mental deficiency, the court must order the person referred to the Department of Mental Health and Substance Abuse and suspend criminal proceedings. If the Department of Mental Health and Substance Abuse reports that the person has achieved competency, the court holds another competency hearing and if the person is determined to be competent, criminal proceedings resume.[6] 22 O.S. Supp.1997, § 1175.6(A)(3).
¶ 9 The argument for application of criminal law relating to suspension of proceedings to child termination proceedings is inappropriate. In the criminal context, the liberty interest to be protected is that of the accused. The interest in the termination of parental rights cases is shared between the parent's interest in the integrity of the family and the State's interest in protecting children. Matter of A.M., 2000 OK 82, 13 P.3d 484, 488. Suspension of criminal proceedings pending treatment or acquisition of competency is a benefit to the accused. If the accused never acquires competency, the criminal proceedings will never resume. However, indefinite uncertainty is generally condemned in termination proceedings.[7] It is generally in the best interests of children to have a stable home environment. This has been recognized by the Legislature by adding 10 O.S. Supp.1998 § 7006-1.6 to the grounds for termination (child in foster care for fifteen of most recent twenty-two months).
¶ 10 Section 7006-1.1(A)(13)(e) requires the State to prove that the mental condition of the parent will not respond to treatment and will not substantially improve. This reflects the Legislature's intent that termination actions proceed to a conclusion in cases of mental illness, not that they be suspended. In addition, the procedure used in this case, appointment of a guardian ad litem, adequately assured Bratcher of her *904 due process right to notice and an opportunity to be heard.
¶ 11 In Vance v. Federal National Mortgage Association, 1999 OK 73, 988 P.2d 1275, the borrower sued to vacate a default judgment on the grounds that she was mentally incapable of understanding the summons and that the lender committed fraud when it served her knowing of her mental infirmity. The Oklahoma Supreme Court reversed summary judgment granted the lender because there was a material fact in dispute, i.e., the mental condition of the borrower.
¶ 12 The Supreme Court also described the legal framework applicable to the borrower's argument. First, it is presumed that a party cognitively appreciates the notice imparted by service of process. A party's mental condition must be put in issue, as it was by the borrower's motion to vacate judgment. The trial court must then determine whether the party "is so mentally incapacitated that she was unable to understand the import of service of process." 988 P.2d at 1281.
¶ 13 The Supreme Court then stated in a footnote:
The Court today does not require assessment of a defendant's mental competency as a predicate to an action's initiation. Unless a person has been judicially declared to be incompetent, he/she can prosecute or defend a civil action in person or by attorney.
This does not mean that a mentally disabled person will not receive the court's protection as 12 O.S.1991 § 2017C[8] allows for the appointment where appropriate of a guardian ad litem for the protection of a litigant's rights and interests. A guardian ad litem's appointment does not amount to an adjudication of incompetency but would merely be a determination of the fact that the state of the record indicates the need for court intervention for a party's protection. It is an assertion of the Court's inherent common-law equitable powers.
988 P.2d at 1281 n. 27.
¶ 14 In the instant case, Bratcher raised the issue of her mental capacity. The trial court made a determination that she was incompetent. Under § 2017(C), the trial court was required to appoint a guardian ad litem or make some other appropriate order for the protection of the incompetent person. It did so.
¶ 15 In essence, Bratcher argues that if she is incompetent under the criminal standard, i.e., cannot understand the nature of the charges brought against her and cannot effectively and rationally assist in her defense, then the parental termination proceedings should be suspended or dismissed. Bratcher cites no authority for the argument.[9] It seems unlikely that Oklahoma would support such a notion, when such a level of incompetency would be directly relevant to that person's ability to act a parent and it would not be in the best interest of the children to indefinitely delay termination proceedings. We reject the argument. Bratcher received the process that was due under the facts and law applicable to this case.
¶ 16 For the reasons stated, we AFFIRM the judgment terminating Bratcher's parental rights in her five older children.
¶ 17 HANSEN, C.J., and GARRETT, J., concur.
NOTES
[1] The father of the children had previously relinquished his parental rights. This appeal deals only with Judy Bratcher's termination of parental rights.
[2] 43A O.S.1991 § 6-201(g): "Mental deficiency" shall mean mental deficiency as defined by appropriate clinical authorities to such extent that a person so afflicted is incapable of managing himself and his affairs, but shall not include mental illness as defined herein.
[3] The baby who was taken into State custody and placed in foster care immediately after his birth was adjudicated deprived, but Bratcher's parental rights in this child were not terminated. The trial court reasoned that Bratcher had never had him in her care, and ordered a treatment plan be generated to determine whether Bratcher could acquire the necessary skills to care for one child as opposed to six.
[4] A police officer responding to Bratcher's 911 call (claiming that Bratcher's husband was intoxicated), testified about the number of roaches he found outside and inside the house, including one crawling on one of the children. He stated that the house was filthy and that there was a strong odor permeating from the backed up sewer in the bathroom. He also testified that all of the children had head lice; that one had a rash around his eyes and one had a rash which appeared to be caused by soiled underwear which had not been changed in a while. He stated that there was no food in the refrigerator. He testified that he felt the children were in imminent danger and called for their immediate pick-up by the Department of Human Services. Next, a child welfare worker testified about the chronic nature of the conditions in this household and that the children had been in and out of foster care for four years. A counselor testified to the extensive developmental delays in social interaction and hygiene. The children required occupational therapy, physical therapy, and speech therapy. The foster mother who had care of the five older children testified to their special needs. She and her husband desired to adopt the children, with the hope that by the time they are adults, they will be able to function independently.
[5] In criminal proceedings: "Competent" or "competency" means the present ability of a person arrested for or charged with a crime to understand the nature of the charges and proceedings brought against him, and is able to effectively and rationally assist in his defense. A person may be incompetent due to physical disability. 22 O.S.1991 § 1175.1(1).
[6] The parties assume that the test for competency in criminal proceedings is applicable to civil proceedings. We agree that if a party in a civil proceeding meets the test found in § 1175.1(1), then the provision of 12 O.S.1991 § 2017(C) apply. We do not address whether this is the exclusive test. In In re Christina B., 19 Cal. App.4th 1441, 1450, 23 Cal.Rptr.2d 918 (1993), the court held that use of the criminal elements [lacks the capacity to understand the nature or consequences of the proceeding, or is unable to assist the attorney in the preparation of her case] for determining incompetency, and thus triggering the appointment of a guardian ad litem, was the proper standard to use in a termination proceeding. The parent was required to carry the burden of proof of incompetency by a preponderance of the evidence.
[7] In this case, an order was entered April 24, 1997, that Bratcher was incompetent to stand trial on the criminal charges. The State sought termination of parental rights in an Amended Petition filed August 22, 1997. Trial on the termination request was originally set on December 13, 1999. Trial did not commence until October 13, 2000.
[8] § 2017(C) provides:

C. INFANTS OR INCOMPETENT PERSONS.
Whenever an infant or incompetent person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. If an infant or incompetent person does not have a duly appointed representative he may sue by his next friend or by a guardian ad litem. The court shall appoint a guardian ad litem for an infant, or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person. (Emphasis added).
[9] A similar argument was made in In re Christina B., 19 Cal.App.4th 1441, 1450 n. 4, 23 Cal. Rptr.2d 918 (1993), to which the Court stated:

First, no statute or case so requires. Second, to suspend the proceedings would be completely at odds with the intent of the juvenile court to look after the children's best interests. These interests require an expeditions resolution of dependency cases.