2011 OK CIV APP 99

**Richard BROWN, Plaintiff/Appellant,**

v.

**OKLAHOMA FARM BUREAU MUTUAL INSURANCE COMPANY and AG Security Insurance Company, Defendants/Appellees.**

No. 108,726.

Court of Civil Appeals of Oklahoma, Division No. 3.

May 27, 2011.

As Corrected Sept. 27, 2011.

Steven V. Buckman, Buckman & Roach, Tulsa, Oklahoma, for Plaintiff/Appellant.

Stephen M. Coates, Wilson, Cain & Acquaviva, Tulsa, Oklahoma, for Defendants/Appellees.

KENNETH L. BUETTNER, Judge.

¶ 1 Plaintiff/Appellant Richard Brown appeals from summary judgment entered in favor of Defendants/Appellees Oklahoma Farm Bureau Mutual Insurance Company (Farm Bureau) and AG Security Insurance Company (AG) (collectively, Insurers). Brown sought damages for bad faith and breach of contract. The undisputed evidence shows the policy excluded coverage for Brown's claim; necessarily Insurers had a reasonable basis to deny the claim. Farm Bureau and AG were entitled to judgment as a matter of law and we affirm.

¶ 2 In his Petition, Brown asserted that after he purchased a policy from Insurers and made a claim seeking a defense and indemnity in a lawsuit against him, Insurers denied his claim and he ultimately was found liable for negligence in the lawsuit. Brown made claims for breach of contract, bad faith and fraud; he sought actual and punitive damages. Insurers denied Brown's claims and filed separate Motions for Summary Judgment.

¶ 3 In its Motion for Summary Judgment, Farm Bureau asserted the following facts were undisputed and supported judgment in its favor: 1) Brown's insurance policy was issued by AG; 2) AG is a subsidiary of Farm Bureau, but AG is a distinct insurance company doing business in Oklahoma; 3) the policy was not issued by Farm Bureau; 4) AG uses Farm Bureau's claims personnel for claims handling; 5) AG pays Farm Bureau for its claims handling services, but neither Farm Bureau nor its employees receive any benefit based on approval or denial of claims made under AG policies; 6) Farm Bureau does not share the risk of losses on policies issued by AG; and 7) claims paid on policies issued by AG are paid solely by AG and are not paid by Farm Bureau.

¶ 4 Farm Bureau contended that because Brown's policy was issued by AG, there was no contract between Brown and Farm Bureau and, necessarily Farm Bureau could not be liable for breach of contract. Farm Bureau relied on *Wathor v. Mut. Assur. Admin., Inc.,* 2004 OK 2, 87 P.3d 559 and *Wolf v. Prudential Ins. Co. of America,* 50 F.3d 793 (10th Cir.1995) to contend that an insurance company handling claims for the policy-issuing insurer must have a financial interest in claims decisions in order to owe a duty of good faith as the insurer.[1] Farm Bureau asserted that it owed no duty of good faith to Brown and therefore he had no claim against Farm Bureau as a matter of law.[2]

¶ 5 In its Motion for Summary Judgment, AG asserted the following undisputed facts required judgment in its favor: 1) Brown was insured by AG under a CGL policy, No. 0500247–CG1, which was effective July 17, 2003 to July 17, 2004; 2) the Northrups filed a lawsuit against Brown and others in Cherokee County Case No. CJ–2004–633 on August 25, 2004; 3) the Northrups' Petition alleged they entered a contract to buy real property owned by the Silvas in Tahlequah; 4) the Northrups further alleged that the

1. *Wathor* and *Wolf* differ from this case in that in those cases, the insured made bad faith claims against third-party administrators of public self-insurance groups. In this case, Farm Bureau admittedly handled claims for AG, but Farm Bureau also was the parent company of AG.

2. Because of our disposition of AG's motion for summary judgment, we do not need to address Farm Bureau's issues.

Silvas concealed structural defects in the property; 5) the Northrups alleged that Brown conducted an inspection of the property; 6) the Northrups alleged that Brown "concealed from Plaintiffs and failed to disclose to them material facts concerning defects in the house and property, and particularly material facts concerning structural defects in the house;" 7) the Northrups alleged that Brown willfully, intentionally, and materially misrepresented the condition of the property with the intent to defraud the Northrups and to induce them to purchase the property; 8) the Northrups' Petition alleged that Brown was grossly negligent in his inspection and his failure to properly inspect or report caused the Northrups to purchase property they would not have purchased if a proper inspection had been done and reported; 9) the Northrups attached as Exhibit 3 to their Petition a copy of the inspection contract, inspection report, and paid invoice; 10) on or about September 1, 2004, Brown provided to Farm Bureau, on behalf of AG, a copy of the Petition and exhibits; 11) on September 14, 2004, after obtaining a legal opinion regarding coverage, Todd Desmet issued a letter denying coverage and a defense to Brown with respect to the Northrups' claims against Brown, pursuant to the policy; and 12) AG denied coverage based on the absence of an occurrence, as defined by the policy; the absence of a claim for property damage, as defined by the policy; the policy's exclusion of coverage for property damage expected or intended by the insured; the policy's exclusion of coverage for liability of the insured because of rendering or failing to render professional services in the performance of an inspection; and the policy's exclusion for damage to impaired property or property which is not physically injured.

¶ 6 In his Response to Farm Bureau's Motion for Summary Judgment, Brown asserted he disputed every statement of fact alleged. Brown asserted Farm Bureau was a *de facto* insurer of his policy. Brown also incorporated by reference his longer Response to AG's Motion for Summary Judgment.

¶ 7 In his Response to AG's Motion for Summary Judgment, Brown disputed AG's statements of fact 1, 8, 11, and 12. Brown's dispute as to fact 1 is that the policy attached to AG's motion was incomplete. As to fact 8, Brown asserted that "a proper investigation would have revealed the Northrups were asserting negligence and differing conclusions could be reached by reasonable persons as to the adjuster's claim activities." Brown disputed fact 11 by asserting there is no written legal opinion in the claim file and "the file is silent regarding the facts given the alleged attorney upon which to base the opinion." Brown asserted missing policy language, specifically about "products/completed operations," coverage could have changed the outcome of a legal opinion on his claim. Finally, Brown disputed fact 12, asserting it did not contain all relevant and material portions of his policy.

¶ 8 Brown alleged several additional facts which he asserted precluded summary judgment in favor of Insurers. Brown claimed the investigation of his claim was inadequate on several bases. He also asserted he was required to carry specified liability limits to be a licensed Oklahoma Home Inspector and he contacted Insurers' agent, Brad Cook, to purchase insurance in order to maintain such a license. Brown averred he understood the purpose of the coverage was to "protect against any harm or financial hardship that might result to home buyers as a result of failures, negligence, or otherwise deficient inspections of houses." Brown asserted he also wanted coverage to protect against lawsuits and legal expenses. Brown alleged the denial of his claim caused him to have to hire an attorney to defend against the lawsuit, which resulted in a jury verdict against him for negligence. Brown lastly alleged the adjuster never mentioned nor paid the supplemental coverage for travel expenses and loss of earnings promised in the policy.

¶ 9 The trial court entered summary judgment in favor of Insurers August 27, 2010. The court found:

the dispositive issue is whether the ... policy ... provided coverage for damages resulting from (Brown's) alleged failure to properly conduct a home inspection for his

clients. . . . (Brown) did not dispute the authenticity of the policy by affidavit or other admissible evidence, but claims in his brief that the policy was incomplete and that a products/completed operations liability coverage form found in (Brown's) claim file should be considered a part of the policy.

The CGL policy, by its terms, covers "property damage" that is caused by an "occurrence". An occurrence is defined by the policy as an accident. Property damage is defined by the policy as physical injury to tangible property. Since (Brown) was never accused of having an accident that caused physical injury to his client's property, it seems clear enough that the CGL policy did not provide coverage in this situation.

Even if the CGL policy were interpreted liberally enough to cover (Brown's) alleged tortious conduct, it specifically excludes property damage resulting from "rendering of or failure to render professional services in the performance of any claim, investigation, adjustment, engineering, inspection, appraisal, survey or audit services." The Court finds that (Brown) was engaging in professional activity and that the exclusion is applicable.

¶ 10 Summary judgment proceedings are governed by Rule 13, Rules for District Courts, 12 O.S.2001, Ch. 2, App.1. Summary judgment is appropriate where the record establishes no substantial controversy of material fact and the prevailing party is entitled to judgment as a matter of law. *Brown v. Alliance Real Estate Group*, 1999 OK 7, 976 P.2d 1043, 1045. Summary judgment is not proper where reasonable minds could draw different inferences or conclusions from the undisputed facts. *Id.* Further, we must review the evidence in the light most favorable to the party opposing summary judgment. *Vance v. Fed. Natl. Mortg. Assn.*, 1999 OK 73, 988 P.2d 1275.

 ¶ 11 Brown has asserted four issues on appeal. Two of the issues have been waived for failure to preserve a record to support them. First, Brown claims that Oklahoma has a statutory requirement that home inspectors maintain liability insurance and that the exclusion for professional services in his policy contravenes the public policy expressed in the statute. Brown has failed to cite or quote the statute at issue in the record below or on appeal and we therefore may not consider whether his policy violates any public policy expressed in such a statute. Second, Brown claims that the trial court granted summary judgment before discovery could be completed; but he has not presented any record showing that he sought to compel discovery or to delay summary judgment pending discovery. Accordingly, we do not consider these issues on appeal. Instead, as with all summary judgments, we review whether the record on appeal shows any dispute of material fact.

 ¶ 12 We first consider summary judgment on the bad faith claim. An insurer has an "implied-in-law duty to act in good faith and deal fairly with the insured to ensure that the policy benefits are received." *Christian v. American Home Assurance Co.*, 1977 OK 141, 577 P.2d 899, 901. Tort liability for breach of that duty arises where there is a clear showing that the insurance company unreasonably and in bad faith withheld payment of the claim of the insured. *Id.* The central question in a claim for bad faith failure to settle or investigate an insurance claim is: what did the insurance company know, or what should it have known at the time the insured requested payment under the applicable policy, *i.e.*, whether the insurer had a justifiable, reasonable basis to withhold payment when the insured requested the carrier to perform its contractual obligation. *Newport v. USAA*, 2000 OK 59, 11 P.3d 190, 195; *Conti v. Republic Underwriters Ins. Co.*, 1989 OK 128, 782 P.2d 1357, 1362; *Buzzard v. McDaniel*, 1987 OK 28, 736 P.2d 157, 159. Because disagreements may arise over the amount of coverage, the cause of loss, and breach of the policy conditions, the duty of good faith and fair dealing does not preclude the insurer's right to deny a claim, resist payment, or litigate any claim to which the insurer has a legitimate defense. The reasonableness of any investigation conducted by the insurer is, thus, oftentimes one of the main issues in the bad faith tort case. *Hall v. Globe Life and Acc. Ins. Co.*, 1998 OK

CIV APP 161, 968 P.2d 1263, 1265–1266 (*cert. denied*). The decisive question is whether the insurer had a "good faith belief, at the time its performance was requested, that it had justifiable reason for withholding payment under the policy." *Buzzard, supra,* at 159.

¶13 In this case, the policy attached to AG's Motion for Summary Judgment shows that Insurer had a justifiable reason for withholding payment. The lawsuit against Brown made claims for property damage which he did not discover or report in performing a home inspection as part of a real estate purchase. The policy excludes coverage for property damage *not caused by* an occurrence. It also excludes coverage for expected or intended injury and for property damage for which an insured may be liable because of rendering professional services in the performance of an inspection. Because of these exclusions, it was reasonable for Insurers to dispute Brown's claim for coverage. As a result, Insurers were entitled to judgment as a matter of law on the bad faith claim.

 ¶14 The interpretation of an insurance contract and whether it is ambiguous is a question of law for the court. *Haworth v. Jantzen,* 2006 OK 35, ¶13, 172 P.3d 193, 196.[3] The parties do not dispute that the policy at issue here includes an endorsement titled "Exclusion—Inspection, Appraisal and Survey Companies" which provides:

> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" for which the insured may be held liable because of the rendering of or failure to render professional services in the performance of any claim, investigation, adjustment, engineering, inspection, appraisal, survey or audit services.

The policy was issued to Brown d/b/a Continental Inspection Service. Brown filed a claim for insurance benefits after he was sued for failing to report defects in a house inspection he performed as Continental Inspection Service. Brown's claim sought cov-

erage for liability incurred because of rendering professional services in performing an inspection. The unambiguous language of the policy excludes coverage for Brown's claim as a matter of law. Accordingly, the record shows Insurers were entitled to judgment as a matter of law on Brown's breach of contract claim.

¶15 AFFIRMED.

MITCHELL, P.J., and JOPLIN, J., concur.

---

**3.** In *Haworth,* the court noted: "An insurance contract is ambiguous only if it is susceptible to two constructions on its face from the standpoint of a reasonably prudent layperson, not from that of a lawyer." *Id.*