2012 OK CIV APP 3

**Tammie PROVINSAL, individually and as parent and natural guardian of Douglas Provinsal, a minor, Plaintiff/Appellant,**

v.

**SPERRY INDEPENDENT SCHOOL DISTRICT NO. 8 OF TULSA COUNTY, Defendant/Appellee.**

No. 109,284.

Court of Civil Appeals of Oklahoma, Division No. 3.

Dec. 1, 2011.

James C. Daniel, The Robinson Law Firm, Tulsa, Oklahoma, for Plaintiff/Appellant.

Stacie L. Hixon, Steidley & Neal, P.L.L.C., Tulsa, Oklahoma, for Defendant/Appellee.

KENNETH L. BUETTNER, Judge.

¶ 1 Plaintiff/Appellant Tammie Provinsal, individually and as parent and natural guardian of Douglas Provinsal, appeals from summary judgment granted in favor of Defendant/Appellee Sperry Independent School District No. 8 of Tulsa County (School) in Provinsal's suit for damages under the Government Tort Claims Act (GTCA). The undisputed material facts show School's actions were not the proximate cause of the harm and School could not be liable for negligence as a matter of law. We affirm.

¶ 2 In her February 1, 2010 Petition, Provinsal alleged her son Douglas suffered a broken shoulder when he was pushed to the ground by another student while on the playground at Sperry Middle School. She claimed School was negligent in failing to provide adult supervision of the students at the time of the injury. Provinsal made claims for pain and suffering on behalf of her child and for economic losses on behalf of herself. Provinsal lastly alleged she timely filed her GTCA claim with School and then filed her Petition within 180 days of School's denial of the claim.

¶ 3 School filed its Motion for Summary Judgment October 28, 2010. School contended that it was immune from liability under the GTCA, but alternatively, even if it was not immune, Provinsal had failed to prove School breached its duty of care or proximately caused the injury alleged. School asserted 17 undisputed facts that required judgment in its favor: 1) Douglas was a student at School; 2) School is a political subdivision of the State and is subject to the GTCA; 3) Douglas was in the seventh grade when he was injured on School's grounds April 24, 2009; 4) on that day, a substitute teacher in charge of Douglas's class allowed some of the students to go outside during the last period, as long as they were in sight of the classroom; Douglas, three other boys, and a girl went outside then; 5) Douglas and the four others played basketball; 6) the ball bounced away from the court and Douglas and the girl ran after it, shoulder to shoulder, and both fell to the ground; 7) the substitute teacher watched the children playing basketball from the classroom window; she turned to check on the class, and when she turned back to the window she saw Douglas falling; 8) Douglas saw the substitute teacher watching him through the window; 9) prior to the fall, the students' play did not appear malicious or out of control, and their play was not so rough as to cause the teacher's aide, who was also watching, to intervene; 10) before Douglas and the girl fell, the aide saw no altercation or unusual behavior between them; 11) Douglas contends the girl purposely grabbed him around the neck and when he broke free, she pushed him to the ground, causing his injury; 12) during the game, the girl had not spoken to Douglas or the other boys and none of them had spoken to her; 13) prior to the accident, Douglas had never had a disagreement with the girl; 14) prior to the date of the accident, the girl had never done anything around Douglas or in front of him that he found to be threatening to his safety; 15) Provinsal cannot identify any evidence which would have put School on notice that the girl was going to harm or injure Douglas; 16) Provinsal had never complained to School about the girl before the accident; and 17) Provinsal contended that Douglas's injuries would not have occurred had School followed its own procedures to supervise students.

¶ 4 Provinsal disputed facts 5, 6, 9, 10, and 15. As to fact 5, Provinsal cited Douglas's testimony that the girl was not playing basketball but was sitting on the sidewalk nearby, and she contended that a supervising teacher would have seen the girl chasing the ball as interfering with the boys' established game. As to fact 6, Provinsal asserted that while a teacher's aide testified the girl and Douglas were running "shoulder to shoulder" after the ball, Douglas testified he did not

see the girl running for the ball until he heard her say "move, Doug." Provinsal questioned the aide's credibility. As to fact 9, Provinsal asserted the aide testified the students were engaged in horseplay and she did not tell them to stop. Citing a dictionary definition of "horseplay" as "rough, boisterous fun," Provinsal contended the aide's testimony amounted to testimony that she observed rough play and chose to do nothing about it. As to fact 10, Provinsal cited her response to fact 9 as her statement of dispute.

¶ 5 Finally, Provinsal contended fact 15 may have been true at the time Provinsal gave her deposition testimony, but she contended that did not prove School was not on notice the girl had exhibited aggressive and inappropriate behavior in the past. Provinsal asserted that School's principal was not allowed to answer a question on that issue at deposition and that Provinsal was therefore entitled to an inference in her favor. Provinsal also claimed that if an adult had been watching the students, the adult would have been on notice that the girl "broke from the sidelines of an ongoing game, to involve herself in a game she wasn't participating in, and was acting aggressively and inappropriately when she jumped on Douglas Provinsal and wrapped her arm around his neck before he broke free."

¶ 6 Provinsal asserted that four other facts precluded summary judgment: 1) in interrogatories, School denied having written materials stating guidelines for adult supervision of students on the playground;[1] 2) the substitute teacher testified she did not know School's policies on supervising children or on student safety on the date of the accident and she did not undergo any training or instruction to become a substitute teacher at School; 3) School's current principal and the principal at the time of the accident both confirmed under oath that School's policy regarding supervision of children on the playground is one of common sense and is universal among schools; and 4) both the

substitute teacher and another teacher who was leading her class outside at the time of the fall testified that School's policy for student safety was breached April 24, 2009. As support for this fourth fact, Provinsal attached deposition testimony of Danna Smart, the teacher who, with her aide, was taking her class outside at the time of the accident and saw the girl and Douglas fall. Smart identified a written policy stating "(t)he safety of every boy and girl is to be a matter of serious concern at all times ... children will never be left unsupervised whether in class, on the playground or on a school activity." Smart agreed the policy was that "you don't leave students unattended" and that it was breached as to Douglas Provinsal on the day of the accident. The substitute teacher testified that if that was the policy, then she unknowingly violated it that day.

¶ 7 The trial court granted summary judgment in favor of School in a Journal Entry of Judgment filed February 23, 2011. Provinsal appeals. Summary judgment proceedings are governed by Rule 13, Rules for District Courts, 12 O.S.2001, Ch. 2, App. 1. Summary judgment is appropriate where the record establishes no substantial controversy of material fact and the prevailing party is entitled to judgment as a matter of law. *Brown v. Alliance Real Estate Group*, 1999 OK 7, 976 P.2d 1043, 1045. Summary judgment is not proper where reasonable minds could draw different inferences or conclusions from the undisputed facts. *Id.* Further, we must review the evidence in the light most favorable to the party opposing summary judgment. *Vance v. Fed. Natl. Mortg. Assn.*, 1999 OK 73, 988 P.2d 1275.

¶ 8 In the GTCA, the State adopted the doctrine of sovereign immunity and then waived it to the extent provided in the Act. 51 O.S.2001 § 152.1. School is a political subdivision of the State and therefore has sovereign immunity except as it is waived to the extent and manner provided by the GTCA.

---

1. Provinsal later sought sanctions, claiming that School failed to acknowledge or produce its written policy at the time of the interrogatories. School responded that it had difficulty obtaining the materials because of changes in leadership and that Provinsal had failed to allege she was prejudiced by the delay. Provinsal's fourth statement of fact (*supra*) shows she had some evidence of a written policy by the time she deposed the teachers involved.

School contends it is immune under two exemptions in the GTCA:

> The state or a political subdivision shall not be liable if a loss or claim results from:
>
> * * *
>
> 4. Adoption or enforcement of or failure to adopt or enforce a law, whether valid or invalid, including, but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy;
>
> 5. Performance of or the failure to exercise or perform any act or service which is in the discretion of the state or political subdivision or its employees;
>
> * * *

51 O.S.2001 § 155. In this case, Provinsal complains that School failed to supervise the students and failed to train the substitute teacher to know that students must not be left without supervision.[2]

¶ 9 "Protected discretionary functions include the policy making and planning decisions, although not *negligent* performance of the policy." *Randell v. Tulsa Independent School Dist. No. 1,* 1994 OK CIV APP 156, 889 P.2d 1264, 1267 (*cert. denied*) (emphasis added). In this case, Provinsal presented some evidence of a written policy that may have been violated when the substitute teacher allowed the students to go outside while the teacher remained in the classroom. Accordingly, we agree with Provinsal that the evidence shows a dispute of fact on the issue of immunity.

¶ 10 Nevertheless, a violation of School's policy is not sufficient, by itself, to establish negligence. The essential elements of a negligence claim are: "(1) a duty owed by the defendant to protect the plaintiff from injury, (2) a failure to properly perform that duty, and (3) the plaintiff's injury being proximately caused by the defendant's breach." *Lockhart v. Loosen,* 1997 OK 103, 943 P.2d 1074, 1079. Generally, the question of causation is one of fact for the jury. "However, the question of proximate cause becomes a question of law when the facts are undisputed and there is no evidence from which a jury could reasonably find a causal connection between the allegedly negligent act and the injury." *Lefthand v. City of Okmulgee,* 1998 OK 97, 968 P.2d 1224, 1226. Taking the evidence in the light most favorable to Provinsal, the only inference is that the girl spontaneously jumped up, without warning, and ran after the ball, causing Douglas to fall and be injured. Even a teacher immediately in the vicinity could not have prevented the girl's actions.

¶ 11 In the similar case of *Butler By and Through Butler v. Oklahoma City Public School System,* 1994 OK CIV APP 22, 871 P.2d 444, middle school students were in a gymnasium when one student punched another. The Oklahoma Court of Civil Appeals affirmed summary judgment in favor of the school district, finding no evidence that the alleged lack of supervision was the proximate cause of the injury. The court explained:

> From the facts presented it is undisputed that the incident was directly caused by the intentional conduct of a third person. Even construing these facts in the light most favorable to Appellant, it cannot be said that a lack of supervision (assuming there was such lack), produced the incident in a natural and continuous sequence, unbroken by any independent cause. Speculation is the antithesis of proximate cause and it is certainly speculation that the incident would not have occurred with better supervision.

*Id.* at 446. In this case, the undisputed evidence was that the girl suddenly jumped up and went for the ball as Douglas did. Provinsal can only speculate that a teacher standing nearby could have stopped the students before the fall.

¶ 12 The undisputed evidence shows that the girl's actions amounted to an intervening or supervening cause. In *Randell, supra,* the court explained the application of a supervening cause in a school negligence case:

---

2. Provinsal has not disputed School's statement of fact that the substitute teacher watched the students playing from the window. Provinsal also asserted in her response to School's undisputed fact 9 that an aide was outside and observed the students engaged in horseplay and failed to take action to stop it before Douglas was injured. Accordingly, the undisputed facts do not show a complete lack of supervision.

In other words, even if it could be said that the assistant principal was negligent in the ways alleged, the sucker punch was a "supervening cause" which broke any causal nexus between any negligence of the assistant principal and Appellant's injury. A supervening cause must meet three requirements: (1) It must be independent of the original act of negligence; (2) it must be adequate of itself to bring about the result; and, (3) it must not have been reasonably foreseeable....

The first two requirements are obviously met and need no further discussion. As to the third requirement, the "facts" presented to the trial court and to which we are limited in our review, are devoid of any evidence from which it could be inferred that the assistant principal should reasonably have foreseen that an assailant, unseen by anyone in the crowded hallway, who was neither involved in, nor present at the original attack, would sneak up behind Appellant and "ambush" him....

889 P.2d at 1267 (citations omitted). In this case, Provinsal alleged that the girl intentionally grabbed Douglas and pushed him to the ground. It is not reasonably foreseeable that a student will jump up and intentionally push another student to the ground, nor could a teacher directly supervising the students stop this unforeseeable act in time to prevent the harm.

¶ 13 The undisputed evidence does not create a question on the essential element of causation. Accordingly, School was entitled to judgment as a matter of law.

¶ 14 AFFIRMED.

MITCHELL, P.J., and JOPLIN, J., concur.