J.W. v. INDEPENDENT SCHOOL DISTRICT NO. 10 of DEWEY COUNTY



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:J.W. v. INDEPENDENT SCHOOL DISTRICT NO. 10 of DEWEY COUNTY

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 J.W. v. INDEPENDENT SCHOOL DISTRICT NO. 10 of DEWEY COUNTY
2021 OK CIV APP 34
Case Number: 118832
Decided: 08/12/2021
Mandate Issued: 09/16/2021
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2021 OK CIV APP 34, __ P.3d __

 

J.W., Plaintiff/Appellant,
v.
INDEPENDENT SCHOOL DISTRICT NO. 10 of DEWEY COUNTY, OKLAHOMA, Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF
DEWEY COUNTY, OKLAHOMA

HONORABLE JUSTIN EILERS, TRIAL JUDGE

AFFIRMED IN PART, VACATED IN PART, AND 
REMANDED FOR FURTHER PROCEEDINGS

Brett M. Stingley, AIZENMAN LAW GROUP, PLLC, Tulsa, Oklahoma, for Plaintiff/Appellant

Frederick J. Hegenbart, ROSENSTEIN, FIST & RINGOLD, Tulsa, Oklahoma, for Defendant/Appellee

JOHN F. FISCHER, VICE-CHIEF JUDGE:

¶1 Plaintiff, J.W., appeals a Journal Entry of Judgment granting defendant Independent School District No. 10, of Dewey County, Oklahoma's, motion for summary judgment. This appeal proceeds pursuant to Okla. Sup. Ct. R. 1.36, 12 O.S. Supp. 2013, ch. 15, app. 1, without appellate briefing. J.W. alleged that she was the victim of bullying at school and that District employees were negligent in developing and implementing a statutorily required anti-bullying policy to protect her from that bullying. The district court found that the Oklahoma Governmental Tort Claims Act, specifically 51 O.S. Supp. 2013 §§ 155(4) and 155(5), granted the District immunity from J.W.'s claims. The district court was correct in all but one respect. The Tort Claims Act does not immunize the District from a claim that a District employee was negligent in implementing the District's anti-bullying policy on an operational level. With respect to that aspect of J.W.'s claim, the fact issues have not been resolved and, therefore, it cannot be determined whether the District is entitled to a judgment on all issues. For that reason, we affirm the judgment in part, vacate in part, and remand for further proceedings.

BACKGROUND

¶2 This case began in 2015 when the parents of J.W. filed this action on behalf of their minor daughter. They alleged that J.W. was bullied at Taloga High School, a school in the District. The petition was amended to add a federal Title VII discrimination claim and the District removed the case to federal court. The federal court sustained the District's motion for summary judgment as to the federal claim and remanded the case to State court to resolve J.W.'s negligence claim. After remand, a third amended petition was filed by J.W., who was then over the age of eighteen.

¶3 J.W.'s Third Amended Petition alleged that Taloga High School had a statutory duty to provide students, including J.W., with a safe educational environment free from harassment and bullying and that the High School breached that duty. The petition states that the High School's duty is codified in the Oklahoma "School Safety and Bullying Prevention Act," 70 O.S.2011 and Supp. 2013 §§ 24-100.2 through 24-100.5. The Act defines bullying as follows:

"Bullying means any pattern of harassment, intimidation, threatening behavior, physical acts, verbal or electronic communication directed toward a student or group of students that results in or is reasonably perceived as being done with the intent to cause negative educational or physical results for the targeted individual or group and is communicated in such a way as to disrupt or interfere with the school's educational mission or the education of any student . . . .

70 O.S. Supp. 2013 § 24-100.3(A)(1). The petition states that during the 2014-2015 school year J.W. was bullied and harassed by fellow students on a regular basis, that she reported the incidents of bullying to teachers, guidance counselors and High School administrators, who refused to discipline the students, and that the District failed to implement the anti-bullying measures required by statute.

¶4 The summary judgment proceeding focused on J.W.'s claim that High School employees were negligent in carrying out the District's anti-bullying policy. The District argued that the School Safety and Bullying Prevention Act did not create any duty it would owe to J.W. that could form the basis of her negligence claim and, regardless, it was immune from J.W.'s claim pursuant to the Governmental Tort Claims Act. J.W. argued that the negligent conduct on which she based her claim was "outside the [Tort Claims Act] exemptions for discretionary acts and failing to adopt a statute." According to J.W.: "The record reflects that [the District Superintendent and the High School Principal] had notice that bullying and harassment was occurring but negligently carried out the policies for investigating and preventing bullying and harassment."

I. The Preclusive Effect of the Federal Judgment

¶5 The statement of undisputed facts in the District's motion for summary judgment is taken from the findings of fact included in the federal district court's judgment in favor of the District. That judgment is included in the judgment roll from the federal case and properly filed in this action. See Salazar v. City of Oklahoma City, 1999 OK 20, ¶ 10, 976 P.2d 1056. The District correctly points out that certain factual issues have previously been resolved in the federal court litigation. That action resulted in a judgment in favor of the District on J.W.'s Title VII discrimination claim. That judgment was not appealed and is now final as to those issues. "Once a court has decided an issue of fact or law necessary to its judgment, the same parties . . . may not relitigate that issue in a suit brought upon a different claim." Oklahoma Dep't of Pub. Safety v. McCrady, 2007 OK 39, ¶ 7, 176 P.3d 1194.

¶6 J.W. argues that preclusion does not apply because her State law negligence claim is different from her federal law Title VII discrimination claim. She points out that the federal judgment only decided her Title VII claim and that her Oklahoma law negligence claim was remanded to State court for resolution. J.W. contends that the focus of the federal judgment was "whether the conduct at issue was gender-based." To determine that issue, the federal court was required to decide what conduct occurred, and the determination of that conduct was "necessary to its judgment." Salazar, 1999 OK 20, ¶ 10. Consequently, J.W. may not relitigate any "fact in issue in the second action . . . which was actually determined in the first adjudication." Carris v. John R. Thomas and Assocs., P.C., 1995 OK 33, ¶ 11, 896 P.2d 522. See also, Farley v. City of Claremore, 2020 OK 30, 465 P.3d 1213 (holding that Workers' Compensation Commission finding that injury resulted from a work-related accident precluded subsequently filed district court action based on alleged intentional tort not covered by workers' compensation act).

¶7 Therefore, although J.W.'s negligence claim has not been decided, some of the facts relevant to that claim were decided by the federal court in disposing of J.W.'s Title VII claim. J.W. is correct in pointing out that legal issues regarding the District's duty, the applicable standard of care and any failure to meet that standard in this case were not resolved in the federal litigation. Nonetheless, to review the state district court summary judgment proceedings regarding J.W.'s negligence claim, we rely on the relevant facts established by the judgment in the federal court litigation. To the extent those facts do not address all of the necessary issues, we look to the state court summary judgment record. See Copeland v. The Lodge Enters., Inc., 2000 OK 36, ¶ 8, 4 P.3d 695.

A. Undisputed Facts from the Federal Judgment

¶8 Beginning in her fourth-grade year, and continuing onward, J.W. was bullied at least off and on by fellow District students, C.B. and J.B. During J.W.'s eighth-grade year, the 2014-15 school year, she began receiving harassing telephone calls from blocked or unknown numbers, which she believed came from C.B. and J.B. J.W. did not report those calls to District employees.

¶9 In September of 2014, some Taloga students took an overnight FFA trip. J.W., C.B., J.B. and a fourth student were assigned to the same hotel room. Upon learning that J.W. was taking birth control pills, C.B. and J.B. refused to stay in the same room, because of the possibility that J.W. had contracted a sexually transmitted disease, and called her derogatory names, including "whore" and "slut." There is no evidence that J.W. had a sexually transmitted disease. The fourth student reported that some sort of bullying had occurred to her mother, who told J.W.'s mother. J.W.'s mother reported the incident to the school Principal.

¶10 The Principal interviewed the four students. All indicated that C.B. and J.B. had merely made fun of J.W. in a mean manner for bringing such a large bag, or they denied that anything improper had occurred. The Principal concluded that no bullying had occurred and did not impose any discipline. After several weeks, J.W. reported the true nature of the incident to her mother, but neither J.W. nor her mother informed any District employee that what actually occurred was different than what J.W. and the other students previously had told the Principal.

¶11 In October of 2014, some Taloga students were involved in rehearsal for an FFA ceremony. Unlike the other students, J.W. refused to put her cell phone aside. C.B. and J.B. rudely asked her to discard her phone after J.W. missed several cues. J.W. reported this conduct to the District Superintendent and another employee. The Principal investigated, and all three students reported that the issue was about J.W. refusing to put the telephone aside during the rehearsal. The Principal concluded that bullying had not occurred and did not impose any discipline.

¶12 On a subsequent FFA trip in November of 2014, J.W., C.B., J.B. and a fourth student shared a hotel room. J.B. decided to sleep in the room's bathtub overnight. When J.W. needed to use the toilet, she decided to use the one in the hotel lobby rather than the one in her room next to the bathtub where J.B. was sleeping. On the way back to her room, J.W. encountered a male student from another state, who she met on a previous trip. After they talked for a few minutes, the male student kissed J.W., an act observed by a hotel employee. The next day, J.W. told C.B. and J.B. about the kiss. J.W. claimed that later C.B. and J.B. spread a rumor that J.W. had slept with the boy. After the trip was over, the Principal investigated a report that J.W. had left her room at the hotel during the night. The Principal imposed in-school detention on J.W. and banned her from traveling on any overnight trips without her parents for the remainder of the year. The Principal did not discipline any of the other students.

¶13 On January 8, 2015, the High School counselor informed the Principal that J.W. was "cutting" herself. A counselor spoke with J.W. twice about her self-harm, once with the Superintendent and J.W.'s mother. Each time, J.W. testified that she "lied and said [the cutting] was about social media even though it really wasn't." J.W. did not blame her cutting on District students. The District provided a referral to a private counselor.

¶14 On January 12, 2015, the Principal held a meeting because J.W.'s mother had informed C.B.'s family that she intended to press charges related to the bullying of J.W. by C.B. and J.B. In that meeting, J.W. informed the Principal that C.B. and J.B. had called her a "slut" and a "bitch" and had bullied her based on the kiss during the November 2014 FFA trip. The Principal found J.W.'s story unreliable because she had not mentioned the name-calling when she had been disciplined for leaving her room. The Principal reviewed C.B.'s and J.B.'s cell phones and found no indication of bullying. The Principal did not impose any discipline on C.B. or J.B.

¶15 That same day, C.B. and another student reported to the Principal that J.W. had flipped C.B. off several times. J.W. admitted she had done so, and the Principal imposed in-school detention on J.W. The Principal also instructed teachers to keep C.B. and J.B. separated from J.W.

¶16 The following day, the High School held a bonfire, during which two male students sent sexually inappropriate messages to J.W. J.W. did not report the messages to District employees but the Principal discovered the messages when she was trying to resolve a separate incident. The Principal disciplined the two male students.

¶17 J.W. asserted that the name calling by C.B. and J.B. of "slut," "whore" and "bitch" occurred, "almost always" in their conversations with other persons and was persistent after the November 2014 FFA trip. J.W. did not report the name-calling to the Principal until the January 12, 2015 meeting. J.W. claimed that C.B. and J.B. called her the names in person and "behind her back," and that she did not discover the name-calling to others until January of 2015.

¶18 In April of 2015, J.W. transferred to a different school district. Her grades, which had dipped during the middle portion of the 2014-2015 school year, improved.

B. Additional Facts from the State Court Summary Judgment Record

¶19 Although J.W.'s summary judgment response generally accepted as undisputed the facts from the federal judgment and asserted in the District's motion, she presented additional statements of fact that she argues are also material and undisputed. First, J.W. stated that the District had a "no tolerance" policy regarding harassment and bullying. Although, J.W. did not attach a copy of the policy, her response quoted from the District Superintendent's deposition, which confirms that the District had such a policy and that the policy's definition of "bullying" was identical to the definition in the School Safety and Bullying Prevention Act. The District did not dispute that statement.

¶20 Second, J.W. asserted that the District had notice of several instances of C.B. and J.B harassing J.W. J.W. referenced the Principal's notes of her investigation of the incident after the September 2014 FFA trip. J.W. cited the Principal's deposition to confirm that the Principal was informed that a fourth girl was so upset by the incident that the girl cried to her mother about it. J.W. also pointed out that the Principal could not explain why the Principal wrote the word "skank" in her notes if she concluded that no bullying had occurred.

¶21 Third, J.W. cited the Principal's deposition to show that even though the Principal concluded that no bullying had occurred during the October FFA rehearsal, she instructed a teacher to separate C.B. and J.B. from J.W. during the upcoming November FFA trip; however, the Principal did not follow through to ensure that the students were separated and that the teacher followed the Principal's instructions. The result of this inaction, according to J.W., was that the girls were assigned to the same room and C.B. and J.B. continued to harass her.

¶22 Fourth, J.W. stated that, during the period she was harming herself, she confided in the Principal that C.B. and J.B. were bullying and harassing her. J.W. asserted that this was the fourth such report of bullying and harassment to a District employee. J.W. cites the Principal's deposition to confirm that the Principal did not believe her and did not offer her a bullying complaint form to officially report the bullying.

¶23 Fifth, J.W. cites the Principal's deposition to confirm that, in April 2015, J.W. reported to a teacher that another student had called her a "slut," and that J.W. had received a harassing message on her cell phone. The Principal did not believe J.W. and disciplined her for using her cell phone in class.

¶24 Sixth, J.W. testified that incidents of bullying and harassment occurred about twice a week during the 2014-2015 school year. She testified that in addition to the name-calling by C.B. and J.B., on one occasion C.B. posted a picture of a trash can saying it represented J.W.

¶25 Seventh, J.W. introduced her grade card to show that her grades dropped sharply during the 2014-2015 school year.

¶26 Eighth, J.W. began seeing a mental health professional in January of 2015. J.W. introduced the functional assessment prepared by her Care Coordinator. The document states, among other things, the counselor's conclusion that J.W. had been bullied and harassed at school and on social media for several years and, as a result, J.W. suffered anxiety and depression that led to J.W. cutting and harming herself. The counselor recommended that J.W. transfer to another school, and J.W. followed that recommendation. After J.W. transferred to a different school district, the self-harm stopped and her grades improved.

¶27 The District filed a reply responding to J.W's legal arguments, but did not take issue with any fact asserted by J.W. as undisputed. Generally, uncontroverted statements of fact supported by evidentiary material are taken as true. Okla. Dist. Ct. R. 13(b), 12 O.S. Supp. 2013, ch. 2, app. Further, the evidence in the summary judgment record and the inferences to be drawn from that evidence must be viewed in the light most favorable to J.W., the party opposing the motion for summary judgment. Hargrave v. Canadian Valley Elec. Co-op., Inc., 1990 OK 43, ¶ 14, 792 P.2d 50.

¶28 After hearing arguments from counsel, the district court granted the District's motion for summary judgment, finding that the District was immune from liability based upon the Governmental Tort Claims Act. J.W. appeals the judgment in favor of the District.

STANDARD OF REVIEW

¶29 The District's motion argues it is immune from liability based on provisions of the Governmental Tort Claims Act. "The applicability of a GTCA immunity provision presents an issue of law." State ex rel. Okla. Dep't of Pub. Safety v. Gurich, 2010 OK 56, ¶ 6, 238 P.3d 1 (citations omitted). The District's motion also relies on an interpretation of the School Safety and Bullying Prevention Act to argue that it had no duty to J.W. Statutory interpretation presents a question of law. Troxell v. Okla. Dep't of Human Servs., 2013 OK 100, ¶ 4, 318 P.2d 206. Legal questions involving statutory interpretation are subject to de novo review. Heffron v. Dist. Ct. of Okla. Cnty., 2003 OK 75, ¶ 15, 77 P.3d 1069.

¶30 Section 2056 of the Oklahoma Pleading Code governs the procedure for summary judgment. A motion for summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." 12 O.S.2011 § 2056(C). "Summary judgment will be affirmed only if the appellate court determines from the pleadings and evidence before it, that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fraternal Order of Police v. City of Norman, 2021 OK 20, ¶ 2, 489 P.3d 20 (citations omitted).

¶31 The de novo standard controls an appellate court's review of a district court order granting summary judgment. Carmichael v. Beller, 1996 OK 48, ¶ 2, 914 P.2d 1051. De novo review involves a plenary, independent, and non-deferential examination of the district court's rulings of law. Neil Acquisition, L.L.C. v. Wingrod Inv. Corp., 1996 OK 125, n.1, 932 P.2d 1100.

ANALYSIS

¶32 J.W.'s tort claim against the District is based on the alleged negligent conduct of District employees. That claim depends on the existence of a duty and the breach of that duty. Wofford v. Eastern State Hosp., 1990 OK 77, ¶ 8, 795 P.2d 516. "Whether a duty exists is a question of law . . . ." Id. ¶ 22.

¶33 The District's motion for summary judgment asserts two propositions: (1) Section 100.3(B) of the School Safety and Bullying Prevention Act provides that the Act does not impose a duty, the breach of which could form the basis for J.W.'s negligence claim; and (2) even if the District breached some duty it owed to J.W., it is immune from liability for J.W.'s claim pursuant to sections 155(4) and 155(5) of the Tort Claims Act. The district court did not address the District's School Safety and Bullying Prevention Act argument, relying instead on Tort Claims Act immunity.

I. Tort Claims Immunity

¶34 The State's common-law sovereign immunity from tort liability was abrogated in the "landmark case Vanderpool v. State." Nguyen v. State, 1990 OK 21, ¶ 3, 788 P.2d 962. In response to Vanderpool, the Oklahoma Legislature adopted "the doctrine of sovereign immunity" and then waived that immunity but "only to the extent and in the manner provided in this act . . . ." 51 O.S.2011 § 152.1. The State's tort liability is subject to "thirty-two carefully circumscribed exempted areas" contained in section 155 of the Tort Claims Act. McCathern v. City of Oklahoma City, 2004 OK 61, ¶ 15, 95 P.3d 1090. Section 155 provides, in pertinent part, that a political subdivision of this State is not liable if a loss or claim results from:

4. Adoption or enforcement of or failure to adopt or enforce a law, whether valid or invalid, including, but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation, or written policy.

5. Performance of or the failure to exercise or perform any act or service which is in the discretion of the state or political subdivision or its employees.

51 O.S.2011 § 155. Although dispositive of some of J.W.'s claims, the immunity provided by section 155 does not eliminate all of the District's potential liability.

A. Section 155(4) Immunity

¶35 Section 155(4) provides, in part, that the District is not liable for the adoption of or failure to adopt or enforce a policy or law. The Bullying Prevention Act provides: "Each district board of education shall adopt a policy for the discipline of all children attending public school in that district, and for the investigation of reported incidents of bullying." 70 O.S. Supp. 2016 § 100.4(A).[1] J.W.'s petition contains allegations suggesting that she is claiming that the District failed to adopt the policy required by the Bullying Prevention Act or that the policy adopted was inadequate and did not provide all of the protection required by that Act. Likewise, J.W.'s summary judgment response suggests that she is arguing that the District is liable because its anti-bullying policy "had no reporting system" and the District failed to properly train those charged with implementing that policy.

¶36 It is undisputed that the District had adopted an anti-bullying policy as directed by the Bullying Prevention Act. The School Superintendent testified by deposition that the District had a bullying policy for the 2014-15 school year and discussed some of the elements of that policy. J.W. asserts that the District had a "no tolerance" policy regarding bullying and that the policy was set forth in the student handbook. The District argues that it has immunity with respect to any action taken to "enforce" the Bullying Prevention Act or the District's own anti-bullying policy including the specific response by District employees to J.W.'s claims.

¶37 The immunity provided by section 155 is provided to the governmental entity: "The state or a political subdivision shall not be liable if a loss or claim results from . . . ." 51 O.S.2011 § 155. Paragraph 4 of that statute provides the governmental entity with immunity when the entity decides to adopt or enforce a law, as well as when the entity "fail[s] to adopt or enforce a law." Id. "The State and its political subdivisions enjoy immunity for the choice to adopt or enforce a law, the formulation of law enforcement policy, and the method by which policy is implemented." State ex rel. Okla. Dep't of Pub. Safety v. Gurich, 2010 OK 56, ¶ 11, 238 P.3d 1 (construing the scope of the exemption provided by paragraphs 4, 5 and 6 of section 155 in the law enforcement context). In this context, the word "law" clearly refers to any legislative enactment. The statute also defines "law" to include any "written policy." 51 O.S.2011 § 155(4). Consequently, a governmental entity's decision to enforce a law or written policy is protected, as is the entity's decision not to enforce that law or policy.

¶38 Like a private corporation, a governmental entity can only act through its agents and employees. See Seitsinger v. Dockum Pontiac Inc., 1995 OK 29, ¶ 10, 894 P.2d 1077; Hall v. Sullivan-Dollars, Inc., 1970 OK 97, ¶ 8, 471 P.2d 453. The immunity provided by the Tort Claims Act extends to "political subdivisions, and all of their employees acting within the scope of their employment . . . ." 51 O.S.2011 § 152.1. Consequently, when the applicable provisions of the Tort Claims Act are construed together, it is clear that section 155(4) provides immunity to the decision by a governmental employee to enforce or not enforce a law or written policy.

¶39 However, once the initial enforcement decision is made, section 155(4) immunity ends. Cf., Morales v. City of Oklahoma City ex rel. Oklahoma City Police Dep't, 2010 OK 9, ¶ 12, 230 P.3d 869:

The purpose of §155(4) is to protect the discretionary acts of law enforcement officers in deciding whether a given situation calls for enforcing a law or not. That choice, whichever way it goes, may result in a detriment visited upon either the person with whom the officer is engaged or upon a third person. It is the exercise of that discretion which is protected by this exemption. Once an officer makes the decision to enforce a law by making an arrest, he or she must do so in a lawful manner. If a tort is committed in the process of making an arrest, §155(4) does not provide immunity from suit to the officer's governmental employer for the resulting damages.

As a result, it is one thing for the Principal to have decided not to enforce the District's anti-bullying policy, a decision protected by section 155(4). But having made the decision to enforce the policy in this case, she must do so in a manner consistent with the applicable standard of care. Gurich, 2010 OK 56, ¶ 28. To immunize all conduct by a governmental employee when enforcing a law or policy at the operational level "reads the exemption[] much too broadly." Id. ¶ 9.

¶40 Nonetheless, the District is entitled to judgment as to any claim based on its adoption of an anti-bullying policy, the formulation of that policy, and the method by which the District chose for that policy to be implemented. Id. ¶ 11. In that respect, the district court's judgment is affirmed.

B. Section 155(5) Immunity

¶41 The District also argued that section 155(5) provided immunity because J.W.'s claim that the District failed to protect her from harassment by her classmates involved "discretionary" security decisions. Nguyen v. State, 1990 OK 21, ¶ 5, 788 P.2d 962 (holding that "initial policy level or planning decisions are considered discretionary and hence immune"). Specifically, the District argues that the level of protection or security it provided to J.W. pursuant to its anti-bullying policy is a discretionary function entitled to immunity.

¶42 The District cites two Oklahoma Supreme Court cases in support of this argument. In Truitt v. Diggs, 1980 OK 57, 611 P.2d 633, the administrator of a deceased student killed by another student on school grounds during school hours sued school officials alleging that they were negligent in failing to provide proper crowd control and adequate security. Without specifically discussing any section 155 exemption, the Court determined that the defendants' governmental immunity extended to the discretionary decisions they undertook in establishing a security plan for the school. "A great deal of discretion is involved in determining what security measures are needed." Id. ¶ 9.

¶43 The second case relied on by the District, Franks v. Union City Public Schools, 1997 OK 105, 943 P.2d 611, involved a claim by a student, injured in an "unprovoked one punch fight," that the school was negligent in supervising and protecting students. Id. ¶ 9. As required by statute, the school had adopted a policy governing the supervision of students during the lunch period. However, the fight occurred a few minutes before the designated supervisor was required to be on duty in the hall where the fight occurred. The Court cited Truitt, and determined that the school "acted within the proper discretionary function in determining the type of supervision during the lunch period at the time of Appellant's injury." Id. ¶ 8. Consequently, the Court held that the school was "exempt from liability, pursuant to 51 O.S. [2011] §155(5), for the manner in which [it] enforced the required [student supervision] policy." Id. ¶ 8 (footnote omitted).

¶44 Truitt was decided without the benefit of Nguyen v. State, 1990 OK 21, 788 P.2d 962, the seminal case deciding the scope of section 155(5) immunity. Franks quoted from and relied on Nguyen. In Nguyen, the Oklahoma Supreme Court adopted the "planning-operational approach" for determining section 155(5) immunity. Id. ¶ 5 (footnote omitted).

Under this approach, once a discretionary policy decision has been made, government employees have a duty to execute the policy on the operational level without negligence. Moreover, the general rule under the planning-operational test is that the discretion is exhausted by the initial adoption of policy, and that decisions to apply broad policy in specific cases are operational level decisions. Thus, under this approach the government retains its immunity with respect to formulation of policy, but is subject to liability for routine decisions and daily implementation of the policy or planning level decision.

Id. (footnote omitted). Consequently, any claim that the District's anti-bullying policy is inadequate or that its training program and reporting protocol are insufficient is precluded. The District is entitled to immunity regarding those types of "planning" claims and in that respect, the district court's judgment is affirmed.

II. Negligent Performance of Governmental Acts

¶45 Truitt and Franks are helpful in determining the scope of section 155 immunity in the school setting but do not resolve J.W.'s claim.[2] In her summary judgment response, J.W. states that her case is not about adoption of or failure to adopt or enforce a bullying policy. J.W. argues that District officials were negligent in the manner in which they executed the District's existing anti-bullying policy in response to her claims of bullying. J.W. argues that her negligence claim is based on conduct that falls "outside the exemptions for discretionary acts and failing to adopt a statute."

¶46 The case law in this area has focused on governmental immunity for the acts of law enforcement officials rather than school officials. Nonetheless, those cases establish a general principle. The "exemptions from liability" in the Tort Claims Act do not apply to the negligent performance of a government employee's duties performed in furtherance of an employer's policy. See State ex rel. Okla. Dep't of Pub. Safety v. Gurich, 2010 OK 56, ¶ 28, 238 P.3d 1 (holding that Tort Claims Act exemptions did not apply to a law enforcement officer's decision to pursue or maintain pursuit of a fleeing driver). "Pursuant to Gurich and Nguyen, 'the government retains its immunity with respect to formulation of policy, but is subject to liability for routine decisions and daily implementation of the policy or planning level decisions.'" Smith v. City of Stillwater, 2014 OK 42, ¶ 18, 328 P.3d 1192 (quoting Gurich, 2010 OK 56, ¶ 10; Nguyen v. State, 1990 OK 21, ¶ 5, 788 P.2d 962).

¶47 Section 155(4) cannot be construed to provide a "blanket immunity" for the acts of governmental employees. Tuffy's, Inc. v. City of Oklahoma City, 2009 OK 4, ¶ 20, 212 P.3d 1158. Likewise, the section 155(5) "discretionary exemption is not a black hole enveloping the waiver." Nguyen, 1990 OK 21, ¶ 4. "Almost all acts of government employees involve some element of choice and judgment and would thus result in immunity if the discretionary exemption is not narrowly construed." Id. "[O]perational level decisions made in the performance of policy are considered ministerial and not exempt from liability." Id. ¶ 5.

¶48 As the Dissent points out, no Supreme Court decision has specifically addressed the scope of immunity provided by section 155(4) or 155(5) in a case involving school officials and the School Safety and Bullying Prevention Act. Nonetheless, from the Court's previous decisions we conclude that those provisions do not immunize the acts of District employees when involved in the daily execution of a school district's anti-bullying policy. "[O]nce a discretionary policy decision has been made, government employees have a duty to execute the policy on the operational level without negligence." Nguyen, 1990 OK 21, ¶ 5. After a governmental employer establishes a policy, tort liability for the acts of its employees is determined by whether the acts allegedly committed by those charged with executing that policy on a daily basis "fall below" the applicable standard of care. See Id. ¶ 8. With regard to that issue, there are issues of fact that must be resolved before the District's summary judgment motion can be fully resolved. The summary judgment record reveals the following:

¶49 The Principal investigated J.W.'s reports of name-calling after the September 2014 FFA trip by interviewing the students involved. The Principal concluded that nothing improper happened, but she did write the word "skank" in her notes of those interviews. The Principal could not recall or explain why she wrote that word if no name-calling had occurred.

¶50 Although the Principal concluded that no bullying had occurred during the September 2014 FFA trip, according to the facts determined by the federal court the fourth student in the hotel room reported to her mother that some sort of bullying had occurred, and that student's mother called and reported that fact to J.W.'s mother, who reported the information to the Principal. The Principal interviewed the fourth student, who denied that any bullying had occurred. However, the Principal did not interview that student's mother to try and determine whether the student's statement to the Principal was truthful.

¶51 After investigating the incident during the November 2014 FFA trip, the Principal disciplined J.W. for leaving her room to use the toilet at night. The Principal did not discipline J.B., who decided to sleep in the room's bathtub and deprived J.W. of privacy when she needed to use the bathroom. As J.W. testified: "I don't go to the bathroom in front of people." J.W. is also entitled to the inference that disturbing J.B. to use the bathroom in their assigned room only would have invited additional bullying and harassment. See Hargrave v. Canadian Valley Elec. Co-op., Inc., 1990 OK 43, ¶ 14, 792 P.2d 50 ("All inferences in the evidence must be taken in favor of the party opposing the [summary judgment] motion.").

¶52 During her January 12, 2015 investigation, the Principal, for the first time, took written statements from J.W., J.B. and C.B. C.B. was the first to be interviewed by the Principal. In her written statement, C.B. admitted that she had called J.W. a "ho." The Principal testified that such name-calling was a violation of the school's student code. Nonetheless, when the Principal later interviewed J.W., the Principal testified that she did not believe J.W.'s reports of bullying, did not offer J.W. a bullying report form to officially register her complaints of bullying, and thought J.W. was lying to her during that interview. Further, the Principal did not discipline C.B. despite her admitted violation of the student code.

¶53 The Principal concluded, after each incident, that no bullying had occurred, perhaps in part because J.W. provided different accounts of those incidents. However, J.W. introduced the functional assessment prepared by her independent counselor purporting to show that J.W. had been bullied consistently by fellow students for a number of years.

¶54 Ultimately, the issue is the appropriate standard of care. Given the number of reported incidents of bullying, was it reasonable for the Principal not to believe J.W.'s reports of bullying even in the face of written evidence corroborating at least some of those reports? Did any action or inaction on the part of the Principal or the Superintendent in response to J.W.'s reports of bullying fail to provide J.W. the required level of safety and protection?

¶55 The District is not immune from liability for any negligence by its employees who responded to J.W.'s bullying allegations, and it must still be determined whether the District is entitled to judgment as a matter of law concerning the operational level implementation of its anti-bullying policy. J.W. contends that the material facts concerning this claim establish the District's liability or are disputed and prevent judgment for the District. The district court did not reach this issue because it concluded the District was entitled to Tort Claims Act immunity. Therefore, we cannot resolve that issue in this appeal. An appellate court "will not make first instance determinations of disputed law or fact issues." Bivins v. State ex rel. Oklahoma Mem'l Hosp., 1996 OK 5, ¶ 19, 917 P.2d 456 (emphasis in original). An appellate court "cannot craft an initial decision upon an untried question and then direct that it be followed on remand." Id. (emphasis in original). And, the federal judgment did not address or resolve the standard of care issue relevant to J.W.'s operational-level negligence claim. That remains an issue to be resolved on remand.

III. Section 24-100.3(B) Liability

¶56 Even though paragraphs 155(4) and 155(5) of the Tort Claims Act do not provide complete immunity in this case, we can affirm the judgment in favor of the District on another basis, if available. "When supported by the record, a legally correct [district court] judgment must be affirmed although it was anchored to a theory different from that on which it comes to be tested on appellate review." Myers v. Lashley, 2002 OK 14, ¶ 7, 44 P.3d 553 (citations omitted).

¶57 The District argued that J.W.'s bullying claim failed because she could not establish a duty, the breach of which would support her negligence claim. Specifically, the District relied on section 24-100.3(B) of the School Safety and Bullying Prevention Act: "Nothing in this act shall be construed to impose a specific liability on any school district." 70 O.S. Supp. 2013 § 100.3(B). The District concludes that if "nothing" in the Act imposes liability for the investigation of reported incidents of bullying, it has no duty imposed by the Act to J.W. The District's argument is fundamentally flawed for several reasons.

¶58 First, the "nothing" to which section 24-100.3(B) refers does not, as the District argues, refer to anything a school district does in response to reports of bullying. The term "nothing" in the statute refers to the mandate in the next section of the Act requiring school districts to establish a "policy for the discipline of all children attending public school in that district, and for the investigation of reported incidents of bullying." 70 O.S. Supp. 2013 § 24-100.4(A). The coordinating conjunction "and" connects two words of equivalent weight, here "discipline" and "investigation."[3] Both modify the direct object "policy." The "rules of grammar govern unless they contradict legislative intent or purpose." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 140 (Thomson/West 2012) (footnote omitted). Following general rules of grammatical construction, it is clear that the word "nothing," in section 24-100.3(B) does not refer to any individual investigation conducted pursuant to an anti-bullying policy a school district has adopted. In this case, "the plain meaning of a statute's language is conclusive" and the "statute will be applied as written." Samman v. Multiple Injury Trust Fund, 2001 OK 71, ¶ 13, 33 P.3d 302 (footnote omitted).

¶59 Second, the Legislature's refusal to create a new cause of action in section 24-100.3(B), is different from abrogating existing liability. The District is liable for the negligence of its employees acting within the scope of their employment "if a private person or entity, would be liable for money damages under the laws of this state" unless the Legislature has provided an exemption from liability. 51 O.S. Supp. 2015 § 153(A). And, the tort liability of the State and its political subdivisions, like the District, "may not be abrogated by mere implication . . . ." McCathern v. City of Oklahoma City, 2004 OK 61, ¶ 16, 95 P.3d 1090 (emphasis in original).

¶60 To interpret the School Safety and Bullying Prevention Act as absolving the District from liability for negligent implementation of the District's bullying policy, as the District would have us do in this case, would abrogate Nguyen v. State, 1990 OK 21, 788 P.2d 962, and similar cases holding that negligent implementation of the government's policies is not protected from tort liability by the Governmental Tort Claims Act.

¶61 Nonetheless, the District supports its construction of section 24-100.3(B) of the School Safety and Bullying Prevention Act by citing Young v. Oklahoma City Public Schools, 2013 WL 6567144 (W.D. Okla. Dec. 13, 2013), and cases from other jurisdictions. Young involved a complaint that a teacher was bullying the student plaintiff. The federal court recognized Oklahoma's adoption of the "planning-operational" test in Nguyen for determining the extent of section 155(5) immunity. Id. at *3. However, that court characterized the plaintiff's allegations as describing only discretionary actions in "hiring, retention and supervision of its employees." Id. Consistent with controlling Oklahoma Supreme Court precedent, the federal court held that section 155(5) provides immunity for these types of discretionary actions, even if they are negligently performed. Id.

¶62 The federal court also held that section 155(4) provided immunity "to the extent plaintiff makes her claim based on allegations that the school failed to enforce or carry out a policy." Id. at *4. Because of the narrow allegations in the plaintiff's petition, the court did not discuss the defendant's potential liability for any negligent acts while implementing the school's policy that would not be covered by section 155(4) or (5). Further, Young was decided on the basis of a motion to dismiss, and the allegations in that case are distinguishable from the facts in this summary judgment record.[4]

¶63 However, as the District points out, the Young court also found that 70 O.S. Supp. 2013 § 24-100.3(B) "exempts any school district from liability based on the [School Safety and Bullying Prevention] Act." Id. at *4. We decline to reach this same conclusion.[5] See Johnson v. Ford Motor Co., 2002 OK 24, ¶ 26, 45 P.3d 86 ("Federal court decisions are not binding or controlling upon this Court when construing Oklahoma law."). The proper construction of section 24-100.3(B) begins with the Tort Claims Act. In that Act, the Legislature waived its immunity with respect to liability for loss resulting from the torts of a political subdivision or its employees acting within the scope of their employment. As previously noted, that waiver is specifically made "subject to the limitations and exceptions specified in The Governmental Tort Claims Act." 51 O.S. Supp. 2015 § 153(A). There is no immunity from liability in the Tort Claims Act for actions taken pursuant to the School Safety and Bullying Prevention Act. Properly construed, section 24-100.3(B) of the School Safety and Bullying Prevention Act merely provides that the Legislature, by enacting that statute, did not intend to create any additional liability or cause of action beyond what already existed at the time, that is, the same liability a private person would have subject to the limitations and exemptions in the Tort Claims Act.

¶64 The District also relies on Johnson v. Independent School District No. 89 of Oklahoma County, 2016 WL 1270266 (W.D. Okla., March 31, 2016), a case which does not advance its argument. Johnson concerned a wrongful termination suit by a school employee accused of theft and mismanagement of funds. The plaintiff alleged that the school was negligent in "supervising" the employees who investigated the theft and negligent in its "practices" and "investigation." Id. at *7-8.

¶65 Johnson, like Young, was resolved on the basis of a motion to dismiss. The court noted that Oklahoma had adopted the planning-operational approach to determining discretionary function issues. The court found that the plaintiff's petition did not present "any factual allegations that would remove Defendant's supervisory employment decisions from the discretionary exemption" provided by section 155(5). Id. at *8. The court also found that allegations that the Defendant was negligent in its practices and enforcement of its policies "fall[] within the exemption of § 155(4). Id. at *9. Both of those findings are consistent with controlling Oklahoma law and the discussion of sections 155(4) and 155(5) immunity in Part I of the Analysis in this Opinion.

¶66 As the federal court in Johnson observed: "Distinguishing between discretionary and ministerial activities can be difficult." Id. at *8. Finding that the plaintiff's petition did not contain any allegations of negligent ministerial conduct, the federal court dismissed that petition as required by Oklahoma law. Johnson does not advance the District's argument, because that case did not involve allegations that the officials who implemented school policies regarding investigation of theft and embezzlement committed some tort.

¶67 In contrast to the authorities relied on by the District, this Court has consistently recognized that a school district can be held liable for the negligence of its employees who are implementing a school district policy. See Hasenfratz v. Ponca City Indep. Sch. Dist., 2015 OK CIV APP 82, ¶ 26, 358 P.3d 964 ("[I]t is possible from the Record to conclude that the coaches' actions constituted routine decisions and daily implementation of the District's policy decision permitting the pep rally. In that case, Section 155(5) does not afford immunity."); Provinsal v. Sperry Indep. Sch. Dist. No. 8, 2012 OK CIV APP 3, ¶ 9, 269 P.3d 51 ("'Protected discretionary functions include the policy making and planning decisions, although not negligent performance of the policy.'") (quoting Randell v. Tulsa Indep. Sch. Dist. No. 1, 1994 OK CIV APP 156, ¶ 8, 889 P.2d 1264).

¶68 However, in Summers v. Sayre Public Schools, (No. 116,522, Okla. Ct. App. Div. IV, Dec. 31, 2018), cited by the District, another Division of this Court reached a contrary result. Summers involved allegations that the plaintiff's school and school board did not properly weight some of her course credit resulting in a lower class ranking for graduation and depriving her of being recognized as the class valedictorian or salutatorian. The plaintiff alleged that during this process she was bullied over the controversy by the student who was selected as the valedictorian and that student's friends. The school principal and superintendent were sued for negligence regarding their response to the plaintiff's reports of bullying.

¶69 The Court in Summers affirmed summary judgment in favor of the defendants, finding that the Torts Claims Act and section 24-100.3(B), when construed together, evidenced a Legislative intent to exempt school officials "from liability for claims of ordinary negligence in the carrying out of bullying policies adopted pursuant to the School Safety and Bullying Prevention Act." Id. at *36. In our view, that result depends on construing the word "enforce" in section 155(4) of the Tort Claims Act to apply to operational acts implementing an anti-bullying policy after the protected decision to adopt that policy has already been made. For the reasons discussed in Part II(A) of the Analysis in this Opinion, we cannot reach the result reached in Summers. The word "enforce," in that statute refers to the decision to "adopt or enforce a law." 51 O.S.2011 § 155(4). It does not refer to acts taken during the enforcement of a law or policy once "the decision to enforce a law" has been made. Morales v. City of Oklahoma City ex rel. Oklahoma City Police Dep't, 2010 OK 9, ¶ 12, 230 P.3d 869. The "mere mention" of the word enforce in J.W.'s court filings is not sufficient to invoke the protection of section 155(4). Smith v. City of Stillwater, 2014 OK 42, ¶ 18, 328 P.3d 1192.

¶70 The District's argument in reliance on Summers, as well as cases from other jurisdictions, does not persuade us to deviate from the holdings in Hasenfratz, Provinsal and Randell. Further, the result of the District's failure to call these cases to the district court's attention was a misrepresentation of Court of Civil Appeals jurisprudence on this issue.

¶71 Section 24-100.3(B) of the School Safety and Bullying Prevention Act does not provide immunity for tortious conduct by District employees engaged in implementing and enforcing the District's anti-bullying policy. More importantly, that section does not absolve the District from liability for torts committed by District employees, acting within the scope of their employment, who are responding to specific reports of bullying. The judgment in favor of the District cannot be affirmed on the basis of its proposed interpretation of section 24-100.3(B) of the School Safety and Bullying Prevention Act. Further, any perceived absence of duty based on the District's interpretation of that statute does not resolve the District's liability for any breach of its general duty to J.W.

IV. The District's General Duty to Children in its Custody

¶72 In Lowery v. Echostar Satellite Corporation, 2007 OK 38, 160 P.3d 959, the Court noted:

We have long recognized that . . . a person owes a duty of care to another person whenever the circumstances place the one person in a position towards the other person such that an ordinary prudent person would recognize that if he or she did not act with ordinary care and skill in regard to the circumstances, he or she may cause danger of injury to the other person.

Id. ¶ 13 (citing Lisle v. Anderson, 1916 OK 92, 159 P. 278). "'[A] child while in school is deprived of the protection of his parents or guardian. Therefore, the actor who takes custody of a . . . child is properly required to give him the protection which the custody or the manner in which it is taken has deprived him.'" Brewer v. Murray, 2012 OK CIV APP 109, ¶ 14, 292 P.3d 41 (Approved for publication by the Supreme Court) (quoting and adopting Restatement (Second) of Torts § 320 (1965), including cmts. a and b to that section).

¶73 The District's motion for summary judgment does not address its general duty to J.W. "to exercise reasonable care to control the conduct of third persons so as to prevent them from intentionally harming [J.W. while in the District's custody] if the [District] has the ability to control the conduct and knows of the necessity to exercise control of such conduct." Restatement (Second) of Torts § 320. Even if the District were correct, and the School Safety and Bullying Prevention Act did not impose any additional duty, the District's narrow focus on that Act fails to eliminate its potential liability for the breach of its broader duty to protect J.W. while she is in the District's custody. If the moving party has not addressed all material facts, summary judgment is not proper. Spirgis v. Circle K Stores, Inc., 1987 OK CIV APP 45, ¶ 10, 743 P.2d 682 (Approved for publication by the Supreme Court).

¶74 The District owed J.W. a duty, the scope of which is dependent on the facts and circumstances of this case. The scope of that duty, any breach of that duty by District employees, and the proximate cause of any injury suffered by J.W. as a result of that breach remain to be determined. Therefore, as a matter of law the District is not entitled to judgment as to J.W.'s claim that District employees were negligent in implementing the District's anti-bullying policy.

¶75 As a result, we cannot affirm the judgment in favor of the District in its entirety. The district court's judgment as to J.W.'s negligent implementation claim is vacated, and this case is remanded for further proceedings consistent with this Opinion.

CONCLUSION

¶76 J.W. claims that she was bullied by other students. The District has in place an anti-bulling policy as required by statute. J.W. maintains that school officials were negligent in investigating her claim and enforcing the policy. The District argued it was immune from liability as provided by paragraphs 4 and 5 of section 155 of the Governmental Tort Claims Act. The district court found both sections provided a defense and granted the District's motion for summary judgment. That judgment is affirmed with respect to any claim based on the District's decision to adopt an anti-bullying policy and any discretionary decisions made regarding the scope of that policy and the manner in which the District's policy is to be enforced.

¶77 Notwithstanding this immunity, the District is not shielded from liability in cases where District employees are negligent in performing the employee's duties in implementing the District's anti-bullying policy. The judgment in favor of the District in this respect is vacated. On remand, the district court shall resolve J.W.'s negligent operational level claim in accordance with this Opinion. In all other respects, district court's judgment is affirmed.

¶78 AFFIRMED IN PART, VACATED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.

HIXON, P.J., concurs, and RAPP, J., concurs in part, specially concurs in part, and dissents in part.

RAPP, J., concurring in part, specially concurring in part, and dissenting in part:

¶1 I respectfully concur in part, specially concur in part, and dissent in part.

¶2 I concur in the Majority's analysis and ruling regarding the sovereign immunity provisions of 51 O.S.2011, § 155(4) and (5).

¶3 I specially concur with the conclusion that negligence by an employee in performance of the employee's duties lifts the shield of immunity. It is noted, however, that in State ex rel. Okla. Dep't of Public Safety v. Gurich, 2010 OK 56, 238 P.3d 1, and Smith v. City of Stillwater, 2014 OK 42, 328 P.3d 1192, the facts indicate that the employee was grossly negligent. Here, there is no similar contention, and the claim is that the principal was ordinarily negligent. Of course, the final decision of whether ordinary negligence also lifts the immunity shield in school employee cases is for the Oklahoma Supreme Court. However, the Supreme Court's general statement in Smith predicts that the Court will include ordinary negligence as a factor to lift immunity. Smith, ¶ 16, at 1198-99 (quoting Gurich, 2010 OK 56, ¶ 11, 238 P.3d 1) ("The exemptions do not apply to tortious acts of government servants in the daily implementation of policy.").

¶4 I dissent as to the reversal of the summary judgment. I view the Record as being one where the issue of the principal's negligence was paramount. Moreover, I would find that the Record does not establish any material, substantial issue of fact regarding the principal's negligence. This being the case explains the trial court's immunity ruling. Even if it did not do so, the trial court's judgment is the correct result. When a trial court reaches a correct result but for the wrong reason, the judgment is not subject to reversal. Hall v. GEO Group, Inc., 2014 OK 22, ¶ 18, 324 P.3d 399, 406. Therefore, the trial court did not err by concluding that the Governmental Tort Claims Act provided immunity to the School District.

FOOTNOTES

[1] Although amended on several occasions, this provision remained unchanged during the relevant time period of this case.

[2] See Gunn v. Consol. Rural Water & Sewer Dist. No. 1, 1992 OK 131, n.31, 839 P.2d 1345, for cases deciding the scope of section 155(5) immunity in non-school contexts.

[3] "A coordinating conjunction is a conjunction or connecting word that joins two similarly constructed and/or syntactically equal words, phrases or clauses within a sentence. . . . The coordinating conjunctions in English are . . . and . . . ." Richard Nordquist, Coordinating Conjunctions in English, ThoughtCo, Aug. 28, 2020, https://www.thoughtco.com/coordinating-conjunction-grammar-1689929 (last visited Aug. 6, 2021).

[4] Further distinguishing Young from this case is the "plausibility" legal standard governing the dismissal in federal court. That standard requires a complaint to contain sufficient factual matter "to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotations omitted). Oklahoma has not adopted the Iqbal standard to decide motions to dismiss for failure to state a claim. "The purpose of a motion to dismiss is to test the law that governs the claim in litigation, not the underlying facts. . . . A petition can generally be dismissed only for lack of any cognizable legal theory to support the claim or for insufficient facts under a cognizable legal theory." Reynolds v. Fallin, 2016 OK 38, ¶ 5, 374 P.3d 799. In addition, Young did not involve student-on-student bullying like the alleged bullying in this case and what appears to be the primary focus of the Bullying Prevention Act.

[5] We agree with the result reached by the federal court in Young because the plaintiff alleged that the basis of liability was the defendants' "failure to adopt or enforce a specific bullying policy. . . ." Young at *4. With regard to that allegation, section 155(4) provides immunity for the reasons stated in Part I(A) of the Analysis of this Opinion.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1987 OK CIV APP 45, 743 P.2d 682, 58 OBJ 1702, Spirgis v. Circle K Stores, Inc.
Discussed
 1994 OK CIV APP 156, 889 P.2d 1264, 66 OBJ 625, Randell v. Tulsa Independent School Dist. No. 1
Discussed
 2012 OK CIV APP 3, 269 P.3d 51, PROVINSAL v. SPERRY INDEPENDENT SCHOOL DISTRICT NO. 8
Discussed
 2012 OK CIV APP 109, 292 P.3d 41, BREWER v. MURRAY
Discussed
 2015 OK CIV APP 82, 358 P.3d 964, HASENFRATZ v. PONCA CITY INDEPENDENT SCHOOL DISTRICT
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1990 OK 21, 788 P.2d 962, 61 OBJ 674, Nguyen v. State
Discussed at Length
 1990 OK 43, 792 P.2d 50, 61 OBJ 1134, Hargrave v. Canadian Valley Elec. Co-op., Inc.
Discussed at Length
 1990 OK 77, 795 P.2d 516, 61 OBJ 2093, Wofford v. Eastern State Hosp.
Discussed
 1992 OK 131, 839 P.2d 1345, 63 OBJ 2649, Gunn v. Consolidated Rural Water & Sewer Dist. No. 1
Discussed
 1916 OK 92, 159 P. 278, 61 Okla. 68, LISLE v. ANDERSON
Discussed
 1997 OK 105, 943 P.2d 611, 68 OBJ 2538, FRANKS v. UNION CITY
Discussed
 2001 OK 71, 33 P.3d 302, 72 OBJ 2703, SAMMAN v. MULTIPLE INJURY TRUST FUND
Discussed
 2002 OK 14, 44 P.3d 553, 73 OBJ 879, MYERS v. LASHLEY
Discussed
 2002 OK 24, 45 P.3d 86, JOHNSON v. FORD MOTOR CO.
Discussed
 1995 OK 29, 894 P.2d 1077, 66 OBJ 1120, Seitsinger v. Dockum Pontiac Inc.
Discussed
 1995 OK 33, 896 P.2d 522, 66 OBJ 1239, Carris v. John R. Thomas and Associates, P.C.
Discussed
 1970 OK 97, 471 P.2d 453, HALL v. SULLIVAN-DOLLARS, INC.
Discussed
 2003 OK 75, 77 P.3d 1069, HEFFRON v. DISTRICT COURT OF OKLAHOMA COUNTY
Discussed
 2004 OK 61, 95 P.3d 1090, MCCATHERN v. CITY OF OKLAHOMA CITY
Discussed at Length
 1996 OK 5, 917 P.2d 456, 67 OBJ 206, Bivins v. State ex rel. Okl. Mem. Hosp.
Discussed
 1996 OK 48, 914 P.2d 1051, 67 OBJ 1173, Carmichael v. Beller
Discussed
 2007 OK 38, 160 P.3d 959, LOWERY v. ECHOSTAR SATELLITE CORP.
Discussed
 2007 OK 39, 176 P.3d 1194, OKLAHOMA DEPARTMENT OF PUBLIC SAFETY v. McCRADY
Discussed
 2009 OK 4, 212 P.3d 1158, TUFFY'S, INC. v. CITY OF OKLAHOMA CITY
Discussed
 1996 OK 125, 932 P.2d 1100, 67 OBJ 3566, Neil Acquisition, L.L.C. v. Wingrod Investment Corp.
Discussed
 2010 OK 9, 230 P.3d 869, MORALES v. CITY OF OKLAHOMA CITY ex rel. OKLAHOMA CITY POLICE DEPT.
Discussed at Length
 2010 OK 56, 238 P.3d 1, STATE ex rel. OKLAHOMA DEPT. OF PUBLIC SAFETY v. GURICH
Discussed at Length
 2013 OK 100, 318 P.3d 206, TROXELL v. OKLAHOMA DEPT. OF HUMAN SERVICES
Cited
 2014 OK 22, 324 P.3d 399, HALL v. THE GEO GROUP, INC
Discussed
 2014 OK 42, 328 P.3d 1192, SMITH v. CITY OF STILLWATER
Discussed at Length
 1980 OK 57, 611 P.2d 633, Truitt v. Diggs
Discussed
 2016 OK 38, 374 P.3d 799, REYNOLDS v. FALLIN
Discussed
 2020 OK 30, 465 P.3d 1213, FARLEY v. CITY OF CLAREMORE
Discussed
 2021 OK 20, 489 P.3d 20, FRATERNAL ORDER OF POLICE v. CITY OF NORMAN
Discussed
 2000 OK 36, 4 P.3d 695, 71 OBJ 1172, Copeland v. The Lodge Enterprises, Inc.
Discussed
 1999 OK 20, 976 P.2d 1056, 70 OBJ 862, Salazar v. City of Oklahoma City
Discussed at Length
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2056, Motion for Summary Judgment
Cited
Title 51. Officers
 Cite
Name
Level

 51 O.S. 155, Exemptions From Liability
Discussed at Length
 51 O.S. 152.1, Adoption of Doctrine of Sovereign Immunity
Discussed
 51 O.S. 153, Liability - Scope - Exemption
Discussed


 
 








 
 
 
 

 
 




 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA